PARKER *vs.* PORTER, ET ALS.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

The clause of the act of Congress relating to the obstruction of the passage of the mail, is of a penal character, and in its application to individuals, charged with a violation of it, must be strictly construed; and certainly not with less strictness when it is sought under its provisions to protect from the pursuit of creditors the vessels usually employed in the transportation of the mail, in derogation of a right recognised by the laws of the state.

It is not enough that in consequence of the seizure, the mail contractor was put to inconvenience in complying with his contract, and that there ensued a delay in the departure of the mail, the seizure itself must be a *wilful* obstruction.

This action was brought against William A. Bradley and Edwin Porter, both residents of the District of Columbia, and William D. Stone, residing in Mobile, carriers of the United States mail under the firm of Porter, Stone & Co. The claim was for iron work and machinery furnished by the plaintiff for four steam boats, the Long Branch, John Morris, William T. Barry, and Star of the West, which boats were at that time in the employ of the defendants. They drew on Bradley for two thousand dollars in favor of the plaintiff, and this amount was credited upon the account. The bill was protested for non-payment. The sum claimed on the protested bill and damages at ten per cent. and balance of the account amounted to three thousand one hundred and fifty-nine dollars.

An order of attachment issued, and the steam boats Long Branch and Watchman were seized.

On an affidavit of Charles Walker that the Long Branch, of which he was the captain, was then engaged in transporting the mail by a contract between the defendants and the post master general of the United States, and that the detention under the seizure would impede and stop the

transportation of the mail, the judge *a quo* ordered her immediate discharge from seizure. A similar order was made in regard to the Watchman.

On the trial of the rule for the discharge of the Watchman, the plaintiff took a bill of exceptions to the admission of the affidavit of the post master of the city of New-Orleans, stating that the two boats were then employed in the transportation of the mail under contract, and there was no other means of transporting it but in said boats; and that consequently its transportation would be greatly obstructed, retarded, and hindered, if not wholly prevented unless the boats were released.

The plaintiff appealed. The following statement of facts was agreed on by the parties. "Order of seizure and attachment having issued in this case, the steam boats Long Branch and Watchman were seized and attached by the sheriff, in whose custody they now are. It is admitted that said steam boats are now and have actually been for some time past employed in transporting the mail from New-Orleans to Mobile, under a contract with the post master general to that effect; that said steam boats are the private property of the contractors, the defendants, who employ them for the above purpose, it being stipulated by said contract, that said mail shall be conveyed in steam boats between the above mentioned places. It is moreover admitted that the mail bags were put on board the said Watchman for transportation immediately after the seizure and attachment of the same by the sheriff on the 5th Feb. 1834, and was on board at the time of the argument of the rule to set aside such attachment and seizure on the 6th instant, whereon the court ordered the said boat to be released, maintaining the order of seizure and attachment."

*Preston*, for plaintiff and appellant, contended as follows:

By the laws of Louisiana the process of attachment extends to all the property of a non-resident debtor, without allowing any exception whatever. If then any property of a non-

resident be legally exempted from the process of attachment, the exemption must be found in the laws of the United States constitutionally passed. And as the laws of our state are very explicit and imperative on the courts and its officers, unless the law clearly conflicts with a constitutional act of Congress, it must prevail. It is not pretended that our state law as executed in the present case, conflicts with any other act of Congress than that which has been passed in pursuance of the constitutional power of Congress to establish post office and post roads. Under this power expressly granted, Congress have established post offices and post roads, and as a power necessary and proper to carry into effect that expressly granted, have authorised contracts with individuals for carrying the mails. I do not clearly see the necessity or propriety of Congress carrying the mail, because they have the "power to establish post offices and post roads," inasmuch as the mail could and would otherwise be carried by individuals or the states. At all events I suggest it to the serious consideration of the court, whether under the power to establish post offices and post roads, they can cause the mail to be carried between Mobile and New-Orleans by water; thus establishing the high seas as a post road.

Admitting, however, that Congress have the power to contract for carrying the mail, and by water, as necessary and proper for executing the express grant to establish post offices and post roads; is it necessary and proper that they should exempt the carriages, horses, or vessels of the contractor from liability for their debts? and if necessary and proper, have Congress by law, exempted them from liability?

1. It is not necessary that Congress should exempt the carriages, horses, and vessels of the contractors from attachment and seizure for their debts; because the making a contract with them, implies that they are solvent and able to comply with their contract, without any extraordinary exemptions.

2. Because the government takes bond and security for their compliance with their contracts, and therefore, to ensure compliance, are not necessitated to pass laws which in effect exonerates persons from the payment of their debts.

3. Because the government can obtain solvent contractors, and therefore, are not necessitated to employ those who are insolvent. They can employ persons who can give the bond necessary to release an attachment, and are not therefore necessitated to employ those who have not sufficient credit to give the bonds necessary to release their property from attachments.

4. Last of all, the government could carry the mails themselves in their own vessels, and are not therefore necessitated to exempt the property of individuals from liability for their debts, in order to have the mail carried.

For all these reasons too, the exemption of the property of individuals from liability for their debts, is not a proper means to be used by Congress in exercising their power to establish post offices and post roads. Such means are peculiarly improper. 1. Because individuals are bound by morality, law, and a regard to their solemn obligations, to pay their debts, and Congress should not by contracting with them in effect, exonerate them from these obligations. 2. A creditor has a sacred right to his debt; the property of his debtor is in the words of our *Civil Code*, the pledge of his creditor. It thus belongs to the creditor and cannot be taken for public use without just compensation. Let us next inquire if Congress has by law prohibited the seizure or attachment of the private property of those who contract to carry the mail, and which is used for carrying the mail. They have not. Such a law would have been expressed in few and simple words, subject to no doubt or controversy. "Horses, carriages, and vessels employed in transporting the mail, shall not be liable to seizure for the debts of the contractors." Congress has legislated often and minutely in relation to the post office department, but such a clause cannot be found in the statutes of the United States.

Without express laws, courts would have been compelled to arrest soldiers and sailors for debt, whatever they might think of the policy of the process. So also members of Congress are by the constitution privileged from arrest while going to or coming from the capitol. But the exception

proves the general rule *exceptio unius est exclusio alterius.* If it required the constitution to except a member of Congress from arrest, the judge can exempt no other person without law.

It is far more important to preserve that sacred obligation inviolate, than to facilitate the transportation of the mail. Epistolatory intercourse facilitates business and contributes to our pleasure; but the right to receive what is due to us, is a right to live, and to support our families, and to compel men to comply with their obligations and duties is the very end of society. It is urged that the attachment of these mail boats is in violation of the 9th section of the act of Congress passed in 1825, *third Story's Digest, p.* 1987. If so I agree that the attachment should be set aside. On indictment the creditor would plead not guilty, and say I did not knowingly and wilfully obstruct the mail, by attaching the mail boat. The contractors themselves have knowingly and wilfully obstructed the mail, by their faithlessness in not paying my debt and forcing me to attach. They are guilty; I am innocent. I did not retard the passage of the mail by attaching the boat; *the mail* was not on board; I did not retard a driver or carriage, it was *a vessel,* for which the law has not provided. She was at anchor or fast to the wharf. I could not retard the passage of a vessel not under weigh, nor of a mail not in the vessel. Neither the plaintiff or sheriff have violated the section of the act of Congress invoked, and have therefore legally executed the writ of attachment. It cannot be set aside, because the plaintiff has violated no law in exercising a right given to him by law. A temporary stoppage of the mail may have been the consequence of his legal acts; that is not his fault, but the fault of those whose unfaithfulness compels him to resort to legal process.

The stoppage of the mail would, in the hands of proper persons be very temporary, as there is a constant communication between this port and Mobile. Shall the defendants avail themselves of their own wrong and negligence to exempt their property from their debts?

The defendants advance the proposition that "a creditor has not a right to enforce his private claims to the prejudice of the public interest." The proposition I deny and no authority can be produced in its support. The converse of the proposition is contained in the constitution of the United States. My private right is my private property, and "private property shall not be taken for public use without just compensation." If it be for the interest of the public, that the boats remain in the possession of Porter, Stone & Co., the public can deprive me of my private rights to attach them by giving them a just compensation; that is by paying the debts of Porter, Stone & Co.

The power of the general government over the post office department, is not disputed; but it is perfectly consistent with the power of the states to compel all debtors to pay their debts and comply with their contracts. Indeed the latter power is auxiliary to the former. Those alone who can by their good faith or their property be compelled to pay their debts should be employed in the post office.

The case of M'Cullough vs. the State of Maryland, is cited in defence. The state of Ohio attempted to tax the United States Bank; the State of Maryland to prevent the establishment of a branch within her limits. It was decided that the general government could locate a branch in any state; and that the state could not tax the branch thus located. I do not dispute that the general government may locate post offices and post roads in any state, or contend that the state has a right to tax them. But make the case in relation to the bank similar to the present, suppose it should employ a carriage for the regular transportation of its specie, could not the carriage be attached for its owner's debts. Should they rent a banking house, could it not be seized, &c. for a debt against the proprietor.

The principle that all private property, however employed, can be seized, and the difference between seizing the property of individuals, used in the service of the government itself is illustrated in the case of the *Orleans Navigation Company against the schooner Amelia, 7th Martin's Reports.*

*Carleton* and *Lockett, contra,* argued as follows:

By the constitution of the United States, it is provided that "Congress shall have power to establish post offices and post roads." In the same article it is further provided, that Congress shall have power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." *Con. U. S., art.* 1, *sec.* 8. Under this grant of power, Congress have enacted, "that if any person shall knowingly and wilfully obstruct, or retard the passage of the mail, or of any driver or carriage carrying the same, he shall upon conviction, for every such offence, pay a fine not exceeding one hundred dollars," &c. *3d vol. Story's Laws, p.* 1987, *sec.* 9. We shall take it for granted, that this law of the national legislature, is a constitutional exercise of their powers, and is therefore the supreme law of the land, and obligatory upon the state judges. *Con. U. S., art.* 6, *sec.* 2.

The boat is employed, as is admitted in the statement of facts, for the express purpose of conveying the mail, under contract with the defendants, stipulating that it shall be carried *in steam boats.* This contract is under a special law of Congress to that effect. 3 *Story's Laws, p,* 1984, 1987, *sec.* 5. That the seizure and detention of the boat, by the sheriff, must necessarily obstruct and retard the passage of the mail, is self evident, it being the very vehicle appropriated to its conveyance. It is, moreover, admitted that the mail was put on board the 5th February, immediately after the seizure, and was there on the sixth, when the argument to set aside the order was had. So that the passage of the mail was obstructed and retarded twenty-four hours, in virtue of the seizure.

A creditor has not a right to enforce his private claim, to the prejudice of the public interest; and though he disclaim any right to seize and stop the mail itself, yet the effect is the same, if he seize and stop the vehicle in which it is conveyed;

the passage of the mail is thereby obstructed, and this is what the law prohibits.

The case of the United States against Barney, contains a full illustration of this subject, and establishes the very point for which we contend. 3 *Hall's Law Journal, p.* 128. *Sergeant's Con. Law, p.* 127, 8.

The power over the post office department, is an attribute of sovereignty in all countries, and especially secured by the constitution of the United States. It is the appropriate means by which the government exercises many of its vital functions, and conveys all its orders throughout every department, civil and military, and without which the whole machinery would be brought to a pause. Its establishment would be vain and nugatory, if its great purposes could be defeated by process issuing from a state tribunal. *See* 3d vol. *Story's Com. on Con. p.* 22, for many excellent reflections upon this point.

The states of Maryland and Ohio, attempted to prevent the establishment of branches of the United States Bank, within their respective territories, *by indirect means,* the taxation of their property and operations. The causes having been taken before the Supreme Court of the United States, that tribunal determined that the states have no power by *taxation or otherwise, to retard, impede, burthen, or in any manner control the operations of the constitutional laws, enacted by congress, to carry into effect, the powers vested in the national government.* *M'Culloch* vs. *State of Maryland.* *Condensed Rep. Sup. Court, vol. ps.* 479, 80, 2, 5, 6, 7, 8, 9, *and notes ad finem.* The terms of the prohibitory law are so broad, that they make no exception, and protect alike from seizure, a stage, carriage, horse, steam boat, or other vehicle, belonging to the mail carrier, or to the government.

Since the case of the *United States* vs. *Barney,* before cited, no attempt is known to have been made to seize the private property of the mail carriers for debt, notwithstanding the innumerable contracts they must have made with the post office department throughout the Union, for the last twenty-seven years, since the date of that decision. A

plain proof that the law is settled and understood as contended for. Nor is this any hardship; for every one is presumed to know such to be the law: just as the creditor ought to know he cannot arrest the person of a private soldier whom he trusts; or the property or person of a married woman, in certain cases; the property of the government, the salaries of its officers, or the property which the law permits the bankrupt to retain for the support of his family.

By law a certain time is allowed to mail carriers to stop at the various post offices for opening the bags, examining and distributing the mails, and for receiving others in turn, (*Story's Laws, vol.* 3, *p.* 1988, *sec.* 11,) for this purpose there are allowed by regulations, sometimes twenty minutes, sometimes thirty, and at the great distributing post offices, it can never exceed one hour, the driver generally conducts his stage to the door of the post office, where he takes out the bags, delivers them to the post master, and receives them again at the appointed time, he then drives forward the same stage, stopping in like manner at the numerous offices on the road, where he is bound by contract to deliver the mail. The bags are necessarily taken out many times every day. It the stage, or a horse, could be seized at that moment, by a creditor, it is quite plain, that the mail would be obstructed and hindered in its passage, so as utterly to defeat the purpose of the law.

Thus the mail arriving at the rail road, at lake Pontchartrain, must be taken out of the boat to be brought to the city. If the boat could be seized at that moment, then would the mail be as effectually obstructed and hindered in its passage, as if it had been on board, and was by that very means retarded twenty-four hours, as is admitted in the statement of facts; it will not be forgotten that a law of Congress authorises the transportation of mails by steam boats, from New-Orleans to Mobile, so that if it were unlawful to seize and stop a horse, or a stage, if the mail happened not to be in it, it would be equally so to seize a steam boat appropriated by special contract to its transportation. *Story's Laws, vol.* 9 and *p.* 1843, *sec.* 5.

As a further illustration of this subject, I would advert to that section of the law which exempts post masters or post riders from doing militia duty, or serving on juries. *3d vol. Story's Laws, p.* 1996, *sec.* 35.

BULLARD, J., delivered the opinion of the court.

The statement of facts in this case, shows that the plaintiff, a creditor of the defendants, who are non-residents, procured from the court of the first district, an attachment which was levied on the steam boats Long Branch and Watchman, belonging to the defendants, which are now, and have been for some time past, employed in transporting the mail between Mobile and New-Orleans, under a contract with the Post Master General, by which it was agreed that the mail should be conveyed in steam boats. The mail bags were put on board the Watchman for transportation, shortly after the seizure, and were on board when the rule to show cause why the boats should not be released, was argued. The judge *a quo*, ordered the release without security, and the plaintiff appealed.

It is conceded, that by the law of this state, the steam boats in question are liable to be seized, but it is contended by the appellees, that the state law conflicts with acts of Congress, providing for the establishment of post offices and post routes, and for the regular transmission of the mail, and must yield to the paramount authority of an act of Congress.

The Post Master General is authorised by law, to cause a mail to be transmitted by water, from the city of Mobile to the city of New-Orleans. *Vol.* 3, *Laws of U. S. p.* 1984. (*Story's edition.*)

He is further authorised to have the mail conveyed in any steam boat, or other vessel, used as a packet in any of the waters of the United States, provided he does not pay more than three cents on each letter, and not more than one half cent for each newspaper. *Ibid.* 1987.

But the provision of law, particularly relied on by the appellees, is contained in the 9th section of the article above recited, which is in the following words. " That if any person shall knowingly and wilfully obstruct, or retard the passage of the mail, or of any driver or carrier, or of any horse or carriage, carrying the same, he shall upon conviction for every such offence, pay a fine not exceeding one hundred dollars."

These are believed to be the only existing enactments of Congress on the subject. The question therefore is, whether the seizure made by the sheriff, was a violation of this statute and tortious. If so, the party can gain no advantage by it, and the court below was correct, in ordering the release. The arguments of counsel, as well as the statement of facts, present the question in a broader light, to wit: Whether the court is to infer from this act of Congress, upon fair principles of construction, that Congress intended to exempt from seizure, under process issued from state courts, any vehicle or vessel, usually employed in the transportation of the mail, in pursuance of contracts with the post office department, at a time when the mail is not on board, and the vehicle, or vessel, is not " *on its passage carrying the same.*"

That Congress has authority under the constitution to use all proper and necessary means to secure the regular transmission of the mail, admits of no doubt. But we are to inquire not what the authority of Congress is, but how far have they chosen to exercise it. The above recited act is of a penal character, and in its application to individuals, charged with a violation of it, must be strictly construed; and certainly not with less strictness, when it is sought under its provisions to protect from the pursuit of creditors, the vessels usually employed in the transportation of the mails, in derogation of a right recognised by the laws of the state, in according to the general rules of construction, it would seem necessary, in order to convict under this section, and aver and prove, substantially, in the words of the act, that the traverser, knowingly and wilfully obstructed or retarded the passage of the mail, of the drivers, or of the carrier, or of any

The clause of the act of congress, relating to the obstruction of the passage of the mail, is of a penal character, and in its application to individuals charged with a violation of it, must be strictly construed; and certainly not with less strictness when it is sought under its provisions, to protect from the pursuit of creditors, the vessels usually employed in the transportation of the mail, in derogation of a right, recognised by the laws of the state.

EASTERN DIS February, 1834.

PARKER vs.

PORTER ET ALS

It is not enough that in consequence of the seizure, the mail contractor was put to inconvenience, in complying with his contract, and that there ensued a delay in the departure of the mail, the seizure itself must be a wilful obstruction.

horse or carriage carrying the same. Could the sheriff, who made this seizure on the plaintiff, as accessary, be convicted under this statute? Might he not justify himself by showing his process, and that the boat at the time was lying in port and the mail not on board. It is not enough that in consequence of the seizure, the contractor was put to inconvenience in complying with his contract, and that there ensued a delay in the departure of the mail; the seizure itself must be a wilful obstruction.

It has been decided, under a similar statute, by the Federal Courts, that there may be cases in which the mail stage, actually in motion, with the mail on board, might be stopped without incurring the penalty. In the case of the *United States* vs. *Hart*, tried in the Circuit Court, before Judges Washington and Peters, the defendant, a police officer of the city of Philadelphia, was indicted for wilfully obstructing the passage of the mail stage through the streets of the city. The officer defended himself on the ground that the driver was at the time driving at such a rate as to endanger the lives of the citizens, contrary to an ordinance of the city. The court ruled, that if the ordinance conflicted with the act of Congress, it must yield; but that the driver was committing a breach of the peace, independently of the ordinance, and the officer was justified. They went on to say, that if the driver of a mail stage should commit a felony in the street, and then throw himself into his box, or if a felon should place himself in the stage, an officer would be justified in stopping the stage to arrest them, although the consequence might be to retard the passage of the mail. 1 *Peters* 390. *Sergeant on Con. Law*, 327.

The case of the *United States* vs. *Barney*, in the District Court, for the district of Maryland, has been relied on. In that case it appears that the defendant was an innkeeper on the road at the Susquehanna river. He attempted to justify the obstruction, by showing that he had a lien on the stage horses for food furnished them, for some time before their arrest and detention. It does not appear that he had any process, but had refused to let the driver have the horses,

EASTERN DIS.
February, 1834.

PARKER
vs.
PORTER ET ALS

until the bill for feeding them was paid. Judge Winchester, before whom the trial was had, says th it two questions were made:

"First. Whether the right of an innkeeper to *detain* a horse for his food, extends to horses owned by individuals, and employed in the transportation of the mail? and

"Second. Whether such right extends to horses belonging to the United States, and employed in the same service?"

On the first question, he decided that the innkeeper had no lien, because it was evident that some other security was looked to and relied on. But he seems to make the case turn on the question of lien or no lien. Among other arguments to show that there was no lien, the judge says: "a carrier of the mail is bound not to delay its delivery, under severe penalties, and it can scarcely be supposed that he would expose himself to the penalty of such delay, by leaving his horses subject to the arrest of every innkeeper on the road for their food."

The second question raised in that case, has nothing to do with this, as it is not pretended, that the boats are the property of the United States. But the judge goes on *arguendo* to state cases not excepted by the statute, he says "a stolen horse found in the mail stage, the owner cannot seize him." Perhaps not, because it would not be a peaceable taking, if the driver should oppose him, but if he should find his horse which had been stolen, in the stable of the contractor, at one of the *termini* of the mail route, the peaceable taking of the horse would not, in our opinion, be a violation of the act of Congress. "The driver's being in debt," says the judge, "or even committing an offence, can only be arrested in such way as does not obstruct the passage of the mail." In this last case supposed, the judge carries the doctrine much further than judge Washington did in the case above recited. It is not easy to perceive, how a mail carrier arrived at the end of his route, and after delivering his mail, could be protected from arrest for debt, under the provisions of this act of Congress. *Hall's Law Journal, vol 3, p. 127.*

CASES IN THE SUPREME COURT

EASTERN DIS.
February, 1834.

Congress has provided against the wilful and tortious obstruction of the transmission of the mail, but contractors warrant against ordinary delays in its departure and arrival arising from their own fault or want of means, by subjecting themselves to penalties or forfeitures. It would appear to us not a good defence to a suit on the contractor's bond, who was bound to convey the mail by steam boats generally, that a particular steam boat usually employed by him for that purpose, had been seized in port by the sheriff, while the mail was not on board, at the suit of his creditors, although a delay in despatching the mail may have been the consequence.

The court is, therefore, constrained to say, that in their opinion, the act of Congress does not extend to this case, that the seizure was not torteous, and ought to be reinstated.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed, that the cause be remanded to be proceeded in according to law, and that the appellees pay the costs of the appeal.