# DAVIS *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 123.    Argued March 3, 4, 1910.—Decided April 4, 1910.

Even though the certificate is not in proper form this court can review the judgment of the Circuit Court under § 5 of the act of 1891 if the record shows clearly that the only matter tried and decided in that court was one of jurisdiction.

The fact that a writ of error was sued out from the Circuit Court of Appeals to the Circuit Court and dismissed is not a bar to the jurisdiction of this court to review the judgment of the Circuit Court on the question of its jurisdiction as a Federal court.

A court cannot without personal service acquire jurisdiction over the person, and it is open to one not served, but whose property is attached, to appear specially to contest the control of the court over such property; and in this case the appearance of the defendant for that purpose was special and not general.

Neither the enactment of § 5258, Rev. Stat., nor of the Interstate Commerce Law by Congress abrogated the attachment laws of the States. Although different views have been taken in several States as to the immunity from seizure and garnishment under attachment of cars engaged in interstate commerce and credits due for interstate transportation, this court holds that it was within the jurisdiction of the state court to seize and hold the cars and credits seized and garnisheed in this case, notwithstanding their connection with interstate commerce.

THE facts, which involve the liability to attachment of cars used in interstate commerce, are stated in the opinion.

*Mr. Wilbur Owen,* with whom *Mr. Elbert H. Hubbard* was on the brief, for plaintiff in error:

The cars and funds were subject to attachment and garnishment. The rolling stock of railway corporations is personal property, over which they have the power of alienation, and is subject to seizure, when not in actual use, by attachment or execution, or other valid process, the same as other personal property. *Boston C. M. Ry. Co.* v. *Gilmore,* 37 N. H. 410; *Coe* v. *Col. Piq. & I. R. R. Co.,* 10 Ohio St. 372; *Louisville & New Albany Ry. Co.* v. *Boney,* 117 Indiana, 501; *Buffalo Coal Co.* v. *Rochester & S. L. Ry. Co.,* 8th Weekly Notes Cases, 126 (Penn.); *Williamson* v. *N. J. S. R. Co.,* 29 N. J. Eq. 311; *Randall* v. *Elwell,* 52 N. Y. 521; *Potter* v. *Hall,* 20 Massachusetts, 368; *Hall* v. *Carey,* 140 Massachusetts, 131; *Johnson* v. *Southern Pacific,* 196 U. S. 1; Elliott on Railroads, vol. 2, p. 587; Drake on Attachment, 7th ed., § 252A; 4 Cyc. Law & Procedure, p. 557; *The "Winnebago"* v. *DeLaney,* 205 U. S. 354; *Johnson* v. *Chi. & Pac. Elevator Co.,* 119 U. S. 388; *The Robert Dollar,* 115 Fed. Rep. 218; *Ex parte McNeil,* 13 Wall. 236; *Menich* v. *Tehuantepec Co.,* 16 La. Ann. 46; *Sibley* v. *Ferris,* 22 La. Ann. 163; *Haberle* v. *Barringer,* 29 La. Ann. 410; *Sherlock* v. *Alling,* 93 U. S. 99.

Notwithstanding that Congress has passed laws inflicting severe penalties upon anyone who interferes with the transportation of mail, a boat owned by a mail contractor may be

attached if the mail be not on the boat at the time. *Parker* v. *Porter*, 6 La. Ann. 169; 4 Cyc. L., p. 569; Waples on Attachment, § 723; *Briggs* v. *Strange*, 17 Massachusetts, 405.

The fact that chattels were when seized upon attachment, execution or replevin, subjects of interstate commerce or were in transit from one State to another, has never been regarded as preventing their actual seizure if within the jurisdiction of the court issuing the process, and they can even be held by garnishment of the carrier if not too late to arrest the shipment. *Morrell* v. *Buckley*, 20 N. J. L. 667; *Santa Fe Ry. Co.* v. *Kossut*, 19 Am. & Eng. Ry. Cases, 683; 5 Am. & Eng. Ency. of Law, p. 239; Waples on Attachment, 2d ed., § 449; Moore on Carriers, pp. 34, 229, 232; *Adams* v. *Scott*, 104 Massachusetts, 164; *Landa* v. *Holck*, 129 Missouri, 663; *The Robert Dollar*, 115 Fed. Rep. 218, 222.

The cars in question when attached were not engaged in interstate commerce. They were, with one exception, standing "empty and idle" upon the tracks of the garnishees: they had reached their destination and had been unloaded. *Nor. & West. R. R. Co.* v. *Commonwealth*, 93 Virginia, 749. The record fails to establish any contractual relations between the principal defendant and the garnishees.

Even if the garnishees had the right of reloading the cars, it is not claimed that there was any intention on their part to exercise that right. *Rausch* v. *Moore*, 48 Iowa, 611.

No rule of law or statute requires any railway company to receive shipments from connecting lines and transfer them in the same cars in which they are tendered; nor are railway companies bound to allow their cars to go beyond their own terminals, and in practice railway companies often refuse to transport freight in any but their own cars, or to allow their cars to be used beyond their own terminals. Rev. Stat., § 5228, authorizing through shipments is permissive only and imposes no affirmative duties upon railway companies. 6 Am. & Eng. Ency. of Law, p. 609; *Kentucky Bridge Co.* v. *Louisville*, 37 Fed. Rep. 567; Moore on Carriers, 453, 454.

In order that a state law, or the action of state authorities under such law should be construed a "regulation of commerce between States," the operation of such law, or the action of such state authorities must be a direct interference or regulation, and directly and substantially hurtful to such commerce, not a mere incidental or casual interruption or regulation, or remotely hurtful. *Sherlock* v. *Alling*, 93 U. S. 99; *L. & N. Ry. Co.* v. *Kentucky*, 183 U. S. 503; *N. Y., L. E. & W. R. R. Co.* v. *Pennsylvania*, 158 U. S. 431; *Henderson Bridge Co.* v. *Kentucky*, 166 U. S. 150; *L. & N. Ry. Co.* v. *Kentucky*, 161 U. S. 677; *Nashville Ry. Co.* v. *Alabama*, 128 U. S. 96; *Wall* v. *Nor. & West. Ry. Co.*, 44 S. E. Rep. (W. Va.) 294; *Conery* v. *Q. O. & K. Ry. Co.*, 99 N. W. Rep. (Minn.) 365, are not similar in their facts to the case at bar.

Debts due a principal defendant from a garnishee are subject to garnishment wherever the garnishee could as in this case be sued by the defendant. See §§ 3497, 3529 of the Code of Iowa.

There is no inhibition in the laws of Iowa preventing suits by a non-resident plaintiff in the courts of Iowa. Nor is it material that the debt was not made payable in the State where the attachment proceedings were instituted or that the garnishee's contract with the defendant is to pay the money in another State or country than that in which the attachment is pending. 14 Am. & Eng. Ency. of Law, pp. 804, 816; *Harvey* v. *G. N. Ry. Co.*, 50 Minnesota, 405; Drake on Attachment, 7th ed., § 597; *Mooney* v. *Buford*, 72 Fed. Rep. (C. C. A.) 32; *Mooney* v. *U. P. R. R. Co.*, 60 Iowa, 346; *German Bank* v. *Ins. Co.*, 83 Iowa, 491; *National Fire Ins. Co.* v. *Chambers*, 53 N. J. Eq. 468; *Blake* v. *Williams*, 6 Pick. 286; Minor on Conflict of Laws, § 125; *Wyeth Hdw. Co.* v. *Lang*, 127 Missouri, 242; *Cross* v. *Brown*, 19 R. I. 220; *Harris* v. *Balk*, 198 U. S. 215; *Newfielder* v. *Ger.-Am. Ins. Co.*, 6 Washington, 336; *M. & O. R. R. Co.* v. *Barnhill*, 90 Tennessee, 349; *Smith* v. *Tabor*, 16 Tex. Civil Appeals, 154; *Pomeroy* v. *Rand*, 157 Illinois, 176; *Cousins* v. *Lovejoy*, 83 Maine, 467; *Fithian* v. *Ry. Co.*, 31 Pa.

St. 114; *Barr* v. *King*, 96 Pa. St. 485; *Blake* v. *Huntington*, 129 Massachusetts, 444; *Cahoon* v. *Morgan*, 38 Vermont, 236; *Towle* v. *Wilder*, 51 Vermont, 622; *Mashussuck Felt Mill* v. *Blanding*, 17 R. I. 297.

These garnished funds are not shown to be receipts for carriage of interstate commerce, and even if so they would not be immune from garnishment. The garnishment of these funds would in no sense be a "regulation of commerce between the states."

The statutes of Iowa inhibit special appearances. § 3541 of the Code of Iowa; *Bank* v. *Vann*, 12 Iowa, 523; *Rahn* v. *Greer*, 37 Iowa, 627; *Lesure Lumber Co.* v. *Ins. Co.*, 101 Iowa, 514; *Moffitt* v. *Chicago Chronicle Co.*, 107 Iowa, 412; *Blondel* v. *Ohlman*, 109 N. W. Rep. (Ia.) 806; *Sam* v. *Hochstadler*, 76 Texas, 162; *Lucas* v. *Patton*, 107 S. W. Rep. (Tex.) 1143.

This section of the Iowa Code is binding upon Federal courts held within that State, § 914, Rev. Stat.; *Amy* v. *Watertown*, 130 U. S. 304; but even if not it generally would be binding in this case as it was removed from the state court. The appearance made by the defendant in error, and the matters contained in its motion and affidavit, filed under such appearance, cannot be regarded as a special, but constituted a general appearance.

A special appearance is never allowable except for the single purpose of objecting to the jurisdiction of the court over the person of the defendant. 3 Cyc. L., pp. 502, 511, 527; 2 Ency. of Pl. & Pr. 620, 621, 625; *Elliott* v. *Lawhead*, 43 Ohio St. 171; *Fitzgerald Const. Co.* v. *Fitzgerald*, 137 U. S. 98; *Welch* v. *Ayers*, 61 N. W. Rep. (Neb.) 635; *Abbott* v. *Semple*, 25 Illinois, 91; *State* v. *Buck*, 15 So. Rep. (La.) 531; *Mahr* v. *U. P. R. Co.*, 140 Fed. Rep. 921; *Perrine* v. *Knights Templars*, 101 N. W. Rep. (Neb.) 101; *S. C.*, 98 N. W. Rep. 481; *Dudley* v. *White*, 44 Florida, 264; *Ray* v. *Trice*, 48 Florida, 297; *Reed* v. *Chilson*, 142 N. Y. 152; *Lowe* v. *Stringham*, 14 Wisconsin, 222; *Rogers* v. *McCord, &c.*, 91 Pac. Rep. (Okl.) 864; *Wabash Western Ry.* v. *Brow*, 164 U. S. 271.

An appearance to a writ of attachment is a general appearance, especially when coupled with objections requiring evidence to sustain, or objections to the jurisdiction *in rem,* or it moves to quash for matters not going to irregularity in process or service thereof, and is sought to be sustained by matters dehors the record.    Waples on Attachment, 2d ed., § 702, 658; *Wood* v. *Young,* 38 Iowa, 102; *Whiting* v. *Budd,* 5 Missouri, 443; *Evans* v. *King,* 7 Missouri, 411; *Withers* v. *Rogers,* 24 Missouri, 340; *Greenwell* v. *Greenwell,* 26 Kansas, 530; *Gorham* v. *Tanquery,* 58 Kansas, 233; *Burnham* v. *Lewis,* 65 Kansas, 481; *Frazier* v. *Douglas,* 48 Pac. Rep. 36; *Nicholas & Shepard Co.* v. *Baker,* 13 Oklahoma, 1; *Ray* v. *Mercantile Co.,* 26 Pac. Rep. 996; *Duncan* v. *Wycliffe,* 4 Met. (Ky.) 118; *Raymond* v. *Nix,* 49 Pac. Rep. 1110; *Gann* v. *Beasly,* 59 N. W. Rep. 714; *Cooper* v. *Reynolds,* 10 Wall. 308.

Although the defendant in error did not ask for a dismissal of the action in its written motion filed under its alleged special appearance, the record discloses that on June 6, a second judgment was rendered on motion of the defendant, quashing the service of notice on the defendant, dismissing plaintiff's cause of action and rendering judgment in its favor and against the plaintiff for $129.70.

This was error and is a general appearance.    *Teater* v. *King,* 35 Washington, 138; *Welch* v. *Ayers et al.,* 61 N. W. Rep. 371; *Bucklin* v. *Strickler,* 32 Nebraska, 602; *Everett* v. *Wilson* 83 Pac. Rep. 211.

*Mr. W. H. Farnsworth,* with whom *Mr. Frank L. Littleton* was on the brief, for defendant in error:

The cars attached were engaged in interstate commerce and under control of Congress, notwithstanding some of the cars were empty and awaiting their return to their owner in completion of an interstate journey.    *Johnson* v. *So. Pac. Co.,* 196 U. S. 1; *Connery* v. *Railway Co.,* 92 Minnesota, 20; *Shore & Bros.* v. *B. & O. R. R. Co.,* 76 S. C. 472.

There is a distinction between merchandise which may or

may not become articles of interstate commerce, and cars or other instruments which are used in moving interstate commodities, which may have stopped temporarily on their journey. *Johnson* v. *S. P. Co.*, 196 U. S. 20.

The state laws cannot be permitted to impede or impair interstate traffic, or the usefulness of the facilities for such traffic. *I. C. R. Co.* v. *Illinois*, 164 U. S. 142; *Bowman* v. *Chicago*, 125 U. S. 465; *Ry. Co.* v. *Richmond*, 19 Wall. 584; *C. & N. W. Ry. Co.* v. *Forest*, 95 Wisconsin, 80; *Michigan, C. R. Co.* v. *C. & M. L. S. R. Co.*, 1 Ill. App. 399; *Connery* v. *R. Co.*, 92 Minnesota, 20; *Shore & Bros.* v. *B. & O. R. R. Co.*, 76 S. C. 472; *Seibels* v. *Northern Cent. Ry. Co.*, 61 S. E. Rep. 435; *Wall* v. *Ry. Co.*, 64 L. R. A. (W. Va.) 501.

The method of service of the writs of attachment was irregular and illegal, and conferred no rights upon the plaintiff. The cars sought to be reached were susceptible of manual delivery, and to create any lien or give effect to the proceedings the officer must take manual custody of the property. § 3898, Iowa Code. Also see 1 Shinn on Attach. & Garn., 1st ed., 391; *Culver* v. *Rumsey*, 6 Ill. App. 598; *R. R. Co.* v. *Pennock*, 51 Pa. St. 244; Drake on Attachments, 7th ed., § 246; *Crawford* v. *Newell*, 23 Iowa, 453; *Hibbard* v. *Zenor*, 75 Iowa, 471; *Hall* v. *Craney*, 140 Massachusetts, 131; *Boston R. R. Co.* v. *Gilmore*, 37 N. H. 410.

The statute of Iowa permitting attachments and garnishments, and the sale of property thereunder, is not of itself broad enough to authorize the attachment and sale of railway property necessary in the discharge of its public duties. *Michigan C. R. Co.* v. *C. & M. L. S. R. Co.*, 1 Ill. App. 399; *Connery* v. *R. Co.*, 92 Minnesota, 20; *Shore & Bro.* v. *B. & O. R. R. Co.*, 76 S. C. 472; *Seibels* v. *Northern Cent. Ry. Co.*, 61 S. E. Rep. (S. C.) 435; *Wall* v. *Railway Co.*, 64 L. R. A. (W. Va.) 501; *Railway Co.* v. *Forest*, 95 Wisconsin, 80, *supra.*

Under the common law no such rights exist, and where the right is claimed under a statute, the statute must be

specific in its provisions with reference to the attachment,
seizure and sale of railway property. *Railway Co.* v. *Forest*,
95 Wisconsin, 80; *Commissioners* v. *Tommey*, 115 U. S. 122;
*Wall* v. *Railway Co.*, 64 L. R. A. 506.

Even if ordinarily garnishment proceedings would confer
rights and create a lien in favor of the plaintiff, jurisdiction
could not be thus obtained in this case, because under con-
tracts with the defendant the garnishees had the sole right to
possession and use of the cars until returned to the defendant
in the usual course of operation. Drake on Attachment, 3d
ed., 462; *Wall* v. *Ry. Co.*, 52 W. Va. 485; *Michigan C. R. R.
Co.* v. *C. & M. L. S. R. Co.*, 1 Ill. App. 399; *Connery* v. *Ry.
Co.*, 92 Minnesota, 20; *Johnson* v. *Union Pacific Ry. Co.*, 145
Fed. Rep. 249; *Johnson* v. *Union Pacific Ry. Co.*, 69 Atl.
Rep. 288; *Seibels* v. *Northern Cent. Ry. Co.*, 61 S. E. Rep.
435.

The Interstate Commerce Act enjoining upon railway com-
mon carriers the duty of providing and establishing through
routes, and the railway act of Congress authorizing and em-
powering steam railroads to provide and furnish connections
and through transportation, create a distinction between
water craft engaged in interstate commerce and railway com-
panies so engaged as to the right of foreign attachment. *The
St. Louis*, 48 Fed. Rep. 312; *Union Pac. Ry. Co.* v. *Chicago Ry.
Co.*, 163 U. S. 564.

The garnishees were indebted to the defendant only for
their proportionate share of earnings on account of interstate
shipments, and to allow garnishment of the same would burden
and impede interstate commerce to the same effect as the
actual seizure and attachment of the carrier's cars.

As to the law in regard to garnishment, see Drake on At-
tachment, 3d ed., § 474; Shinn on Attachment, 2d ed., §§ 490,
491, 494; *Railroad Co.* v. *Maggard*, 39 Pac. Rep. 985. See,
also, *Central Trust Co.* v. *Ry. Co.*, 68 Fed. Rep. 685; *Aye* v.
*Lidscomb*, 21 Pick. 263; *Gold* v. *Ry. Co.*, 1 Gray, 424; *Singer*
v. *Fleming*, 39 Nebraska, 679-686; *Drake* v. *Ry. Co.*, 89 Michi-

gan, 168; *Railway Co.* v. *Smith,* 19 L. R. A. (Miss.) 597; *Mc-Sham* v. *Knox,* 114 N. W. Rep. (Minn.) 955.

Special appearances are allowable under the state practice of Iowa where the objection is that service was unauthorized. *Wilson* v. *Stripe,* 4 G. G. Rep. (Ia.) 551; *Hastings* v. *Phœnix,* 79 Iowa, 394; *Crox* v. *Allen,* 91 Iowa, 462; *Chittenden* v. *Hobbs,* 9 Iowa, 417; *Murray* v. *Wilcox,* 122 Iowa, 188; *Cibula* v. *Pitts Co.,* 48 Iowa, 528.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This case presents a question of jurisdiction arising from the levy in attachment proceedings on freight cars alleged to have been engaged, when attached, in interstate commerce. The case is here on certificate.

Plaintiff in error, as executor of the estate of Frank E. Jandt, brought an action against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company for causing the death of Jandt, a statute of Illinois giving such an action to the personal representative of a person whose death has been caused by "wrongful act, neglect or default." The cause of action arose in Illinois. The action was brought, however, in the District Court of Woodbury County, State of Iowa, and under the laws of the latter State writs of attachment and garnishment were issued and levied upon certain cars of the C. C. C. & St. L. Ry. Co., in the possession of the other defendants in error, referred to hereafter as the garnishee companies. Notice of garnishment was duly served on the garnishee companies, and each of them filed answers. Plaintiff in the action, and we will so refer to him, controverted by proper pleadings the answers, and demanded that evidence be taken on the issues joined.

The original notice was served on the C. C. C. & St. L. Ry. Co., at its principal place of business in the State of Ohio; also notice of attachment and garnishment. It filed a petition for removal of the action to the Circuit Court of the United States for the Northern District of Iowa, Western Division. Its peti-

tion alleged that it was a corporation duly formed and organized under the laws of Indiana, and that the plaintiff was a citizen of Iowa. The petition was granted and the case duly removed to the Circuit Court of the United States. On the second of October, 1905, the C. C. C. & St. L. Ry. Co., filed a motion, which was denominated a motion to quash and set aside service, in which it stated that it appeared specially for the purpose of the motion only, "to quash and set aside the service of attachment and garnishment attempted to be made in the cause by plaintiff against the defendant's property." The motion was supported by an affidavit. The affidavit stated that the company was incorporated under the laws of Indiana and Ohio, and conducted and operated lines of railway in those States and in Illinois, with its principal place of business in Cincinnati, Ohio; that it was not incorporated in Iowa, and had no agent or agency of any character in that State; that it was a common carrier of freight and passengers, and in the carrying on of such business it owned and operated cars for the transportation of freight and merchandise through the various States; that in the conduct of such business it had arrangements, contracts and agreements with various connecting railroad companies doing business as common carriers, including all of the railway companies attached and garnisheed in the action by plaintiff, under which those companies accepted from it, at points on its line of road, its cars loaded with goods and merchandise destined for various points on their respective lines, to be transported through the various States to destinations, constituting interstate shipments of commerce. It was stated that it was provided in the agreement that such connecting carriers should have the right to reload the cars received by them, and so use the same in returning them to the place where received, and that in all cases the cars of the company were to be returned to it in the usual and ordinary course of transit as soon as the nature and character of the business would permit. It was further stated that under the laws

of Congress the company was bound to furnish cars so loaded to be transported continuously from one State to another without being unloaded, and that under the same laws connecting carriers were bound to receive the same and transport them from one State to another. That in pursuance of the agreements and laws of Congress the cars attached were delivered by the C. C. C. & St. L. Ry. Co. to the other companies, and so received by them; that the cars were part of the company's rolling stock, and were necessary to enable it to perform its duties as a common carrier; that by reason of the commerce clause of the national Constitution and of the Interstate Commerce Act the cars could not be levied upon; that the company had not been served personally or by publication, and had not appeared in the action to any writ issued in the cause. It was further stated that none of the garnishee companies was indebted to the company, and that any accounts which might be due from the garnisheed companies were only by reason of the contracts and agreements for the use of the cars, as heretofore stated, under which the permits for the use of the cars were arranged between the companies "by wheelage or mileage of such cars, and were constantly and hourly changed from bills due one company to bills due the other company, which bills were satisfied and settled by such exchange of service and use of each other's cars. And such agreements and contracts are to be discharged, satisfied and settled only in the city of Chicago and State of Illinois, where the same are made, and such accounts, or debts, if any, in favor of this defendant, have no situs in the State of Iowa." The affidavit was supplemented by two others.

Plaintiff filed a "resistance" to the motion to quash and to the motion of the garnishee companies, and alleged that a special appearance was "unwarranted and unauthorized by law," and that as the purpose sought by the motion of the defendant company could only be had by a general appearance the special appearance should be construed to be such and subject the "person of the defendant as well as the prop-

erty actually attached, and the property and money of the defendant sought to be reached by garnishment proceedings to the jurisdiction of the court." The ground of 'this conclusion was stated, with some repetition, to be that the special appearance was not for the purpose of raising any question of lack of notice, or notice. of defect or irregularity of process, but to contest the right to attach property by evidence outside the record of the case, and required the court to pass upon the merits of the attachment. Plaintiff denied that the property attached was engaged in interstate commerce or in the transportation of interstate commerce at the time they were attached, that they were not in use at the time they were attached, but were standing empty upon the tracks of the railway companies in whose possession they were found, and denied the existence of the agreements and arrangements between the C. C. C. & St. L. Ry. Co. and the other companies in regard to the cars and that no contractual rules existed between them, that the cars were not necessary either to that company or to the other companies to enable them to perform their duties as common carriers, and alleged that they were subject to attachment as other personal property. It was stated that the garnishee companies had no interest in the attached cars, and none of them had served notice of interest or ownership on the plaintiff nor on the sheriff.

The answers of five of the garnishee companies denied indebtedness to the C. C. C. & St. L. Ry. Co., averred the existence of agreements as to the cars substantially as set out by that defendant, also their duties as common carriers under the acts of Congress, and that the cars were in their possession in pursuance of the agreements with the defendant, and were to be returned empty or loaded in the usual and customary course of business. The other companies also denied indebtedness to the C. C. C. & St. L. Ry. Co., and in effect set up the defense that the cars were in interstate commerce business.

On the twenty-second of May, 1906, the court sustained the motion to quash the judgment and discharge the gar-

nishees thereunder. On June 6 "the court" (we quote from the record) "rendered further judgment, dismissing the said cause of action as to said principal'defendant, on the ground that the court had no jurisdiction of the defendant or the attached property of the defendant, and taxed the costs in the case to the plaintiff."

The time for the allowance and filing of the bill of exceptions was extended to October 28, 1906, and on the twenty-eighth of September it was allowed, the order reciting as the date "being one of the regular days of the May A. D. 1906 term of said court." The bill of exceptions also recited that it was submitted to the court, with a prayer that it "be signed and certified by the judge, and approved by him and made a part of the record in said cause, preparatory to the prosecution of a writ of error from the said Circuit Court of the United States to the Supreme Court of the United States." It concludes as follows:

"And the court having examined said transcript of the record, papers and proceedings, hereby certifies that the same contains the entire record in said cause, including the plaintiff's petition, the answers of the garnishees, the defendant's motion to quash and set aside service and the plaintiff's resistance thereto, and all of the proceedings had thereunder in reference thereto, including the opinion, orders and judgment of the court thereon, and the exceptions of the plaintiff thereto, and all of the record submitted to the court upon which the judgment herein was rendered.

"On consideration whereof the court does allów the writ of error upon the plaintiff giving bond according to law in the sum of $500, which shall operate as a supersedeas bond.

"And in this case, I, the undersigned, judge of the Circuit Court of the United States in and for the Northern District of Iowa, Western Division, further hereby certify that in sustaining the motion to quash the attachment and discharging the garnishees, and in dismissing the action as to the principal defendant, and taxing the costs to the plaintiff, the sole ques-

tion considered and determined by the court was that the court had no jurisdiction over the person of the defendant or of the property involved, and that the appearance of the principal defendant as shown by the record was a special and not a general appearance, and that the same did not subject said principal defendant and its property to the jurisdiction of the court.

"This certificate is made conformable to the act of Congress of March 3, 1891, chapter 317, and the opinion filed herein is made a part of the record, and will be certified and sent up as part of the proceeding, together with this certificate."

For the opinion of the court, see 146 Fed. Rep. 403.

A writ of error was sued out from the Circuit Court of Appeals, according to the admission of counsel, though there is nothing in the record to show it, which writ was dismissed. 156 Fed. Rep. 775.

A motion is made to dismiss the writ of error, and in support of the motion it is urged (1) that the certificate as to jurisdiction was not granted during the term at which the judgment was rendered; (2) that the writ of error was not perfected in time as required by law, in that the writ and certificate were allowed on the twenty-eighth of September, 1906, and were not prosecuted in this court until April, 1908; (3) that the certificate is not sufficient in law nor proper in form, in that it does not state any facts or propositions of law upon which the question of the court's lack of jurisdiction rested; (4) that the jurisdiction of the court as a Federal court was not put in issue; (5) that the case having been taken to the Circuit Court of Appeals and there decided that the writ of error should be to that court and not to the Circuit Court, the latter court, it is urged, having lost jurisdiction of the case; (6) there is no certificate of a jurisdictional question in the order allowing the writ of error.

The first and second grounds in support of the motion to dismiss are based upon a misapprehension of the record. The

term at which the judgment was rendered had not expired when the certificate of jurisdiction was made, and the writ of error was allowed on the eighteenth of March, 1908, not on September 28, 1906, as contended by defendants in error.

The grounds of the motion based on the form or sufficiency of the certificate are not tenable. Even if we should admit, which we do not, that the certificate is not, as it is contended, in proper form, the record shows clearly that the only matter tried and decided in the Circuit Court was one of jurisdiction. This is sufficient. *United States* v. *Larkin*, 208 U. S. 333, 339.

The other grounds urged to support the motion to dismiss all depend upon the proposition whether the question of the jurisdiction of the Circuit Court as a Federal court was presented. If so, the writ of error from the Circuit Court of Appeals is no bar to the present writ of error. *Excelsior W. P. Co.* v. *Pacific Bridge Co.*, 185 U. S. 282; *United States* v. *Larkin, supra.* And if so, the way is clear to a decision of the question on the merits.

As we have shown, the Circuit Court decided that it had no jurisdiction over either the person or the property of the principal defendant, the C. C. C. & St. L. Ry. Co. The first, non-jurisdiction over the person, depending, as the court considered, upon the second, non-jurisdiction over the property, as we understand the opinion. And this view of it the Circuit Court of Appeals took.

The latter court stated the questions to be, "Was the defendant's appearance to contest the validity of the judgments and garnishments a general one? Were the cars and credits of the defendant subject to judgment and garnishment? In other words, did the trial court secure such dominion over person or property by appearance or process as authorized it to proceed to trial of the action and render a valid judgment upon the issues involved? The trial court answered them in the negative and dismissed the action for the want of jurisdiction. In respect to the essential character of these questions, they are not distinguishable from

one of the legality of the service of summons upon a defend-
ant. They do not pertain to the merits of the case, and did
not arise during the progress of the trial. They lay at the
threshold, and upon an affirmative answer depended the
power of the court to hear and decide the cause. In legal
phraseology that power is termed 'jurisdiction.' It is none
the less a jurisdictional matter in the case of judgment and
garnishment of the property of a non-resident because the
power of the court to proceed to trial depends in the absence
of the defendant upon the lawful seizure of his property.
The question of jurisdiction was decided in favor of the
defendant, and the decision disposed of the case." For these
propositions the court cited *Board of Trade* v. *Hammond
Elevator Co.,* 198 U. S. 428; *United States* v. *Jahn,* 155 U. S.
109; *St. Louis Cotton Compress Co.* v. *American Cotton Co.,*
125 Fed. Rep. 196; and, as we have seen, dismissed the case
on the ground that this court alone had the power to review
the decision of the Circuit Court. We concur in the views of
the Circuit Court of Appeals, for which also may be cited
*Kendall* v. *American Automatic Loom Co.,* 198 U. S. 477.
The motion to dismiss is denied.

The ruling of the Circuit Court dismissing the action is at-
tacked upon the grounds, (1) that the appearance of the C. C.
C. & St. L. Ry. Co. was a general appearance, and, being so,
the railway company submitted itself to the jurisdiction of the
court, "regardless of the seizure of the attached property;"
(2) that the property was subject to attachment.

1. It is not controverted that, if the property was subject to
attachment, the procedure prescribed by the laws of Iowa was
duly observed and hence, it is contended, that the property
having been seized under the jurisdiction of the court under
valid regular process, the motion to quash the attachment was
based on matters *dehors* the record, going to the jurisdiction
of the court over the subject-matter of the action, and the
court had jurisdiction over the person of the railway company.
"A special appearance," it is contended, "can never serve a

dual or triple purpose, but is only allowed for the sole purpose of objecting to the jurisdiction of the court over the person of the defendant."

The ruling of the Circuit Court, we think, was broader than plaintiff conceives it to have been. It appears from the record that the C. C. C. & St. L. Ry. Co. was a corporation of Indiana and Ohio, and that certain of its freight cars were attached in Iowa in the hands of the garnishee companies, and that there were certain credits due to it from some of the latter companies, on account of interstate commerce freight. In other words, it fairly appears upon the face of the complaint in the action and the attachment papers that the cars had been sent into the State in the transportation of interstate commerce. It is true, it was also contended, that an issue was presented by the affidavits upon the motion to quash as to what contractual arrangements existed between the company and the other companies as to the right of the latter companies to reload the cars and so return them, but there was no dispute that it was their duty to receive them. Besides, the bill of exceptions contains the following: "No evidence is submitted by the plaintiff in opposition to the motion of defendant to quash the attachment, or in support of its pleading controverting the answer of the several garnishees, and the matters are submitted upon the record, including such motion and admission of the pleadings."

The question, therefore, was submitted to the court whether the cars, under the circumstances, were engaged in interstate commerce when they were attached, and the court considered it to be immaterial that the cars had not started on a return trip, saying that: "The cars of defendant when brought into the State of Iowa to complete an interstate shipment of property were being used in interstate commerce, and were being so used while waiting, at least, a reasonable time to be loaded for the return trip."

The court further decided that aeots, if any, which were due from the garnishee companies to the C. C. C. & St. L. Ry. Co. for its share of the price of carriage were "as much a part of

interstate commerce, as defined by the Supreme Court, as the actual carriage of their property."

2. The next contention of plaintiff is that the appearance of the C. C. C. & St. L. Ry. Co. was a general appearance and sub-. mitted its person to the jurisdiction of the court. In other words, it is contended that the person over whom personal jurisdiction has not been obtained cannot appear specially to set aside the attachment of his property, which we must assume in order to completely exhibit the contention, is valid. We cannot concur in the contention. It is supported, it is true, by some cases, but it is opposed by more. Drake on Attachments, § 112, and cases cited. The stronger reasoning we think too is against the contention. A court without personal service can acquire no jurisdiction over the person, and when it attempts to assert jurisdiction over property it should be open to the defendant to specially appear to contest its control over such property; in other words to contest the ground of its jurisdiction. *Harkness* v. *Hyde*, 98 U. S. 476; *Railway Co.* v. *Denton*, 146 U. S. 206; *Goldey* v. *Morning News*, 156 U. S. 518, 523; *Railway Co.* v. *Brow*, 164 U. S. 271, 278.

The appearance of the C. C. C. & St. L. Ry. Co. was not to object to the subject-matter of the action, as it is contended by plaintiff. The subject-matter of the action is a demand for damages, which can only be prosecuted to efficient judgment and be satisfied out of the property attached. *Clark* v. *Wells*, 203 U. S. 164. The jurisdiction of the court, therefore, depended upon the attachment, and the appearance to set that aside was an appearance to object to the jurisdiction. In other words, the defendant was only in court through its property, and it appeared specially to show that it was improperly in court.

These contentions being disposed of, we are brought to the question whether the cars were "immune from judicial process" because engaged in interstate commerce. The question has come up in several of the state courts and different views have been taken. The question has been answered in the

affirmative in *Michigan C. R. Co.* v. *C. & M. L. S. R. Co.*, 1
Ill. App. 399; *Connery* v. *R. R. Co.*, 92 Minnesota, 20; *Shore &
Bro.* v. *B. & O.*, 76 S. C. 472; *Seibels* v. *Northern Central Ry.
Co.*, 61 S. E. Rep. 435; *Railway Co.* v. *Forest*, 95 Wisconsin, 80;
*Wall* v. *N. & W. R. R. Co.*, 52 W. Va. 485.  A negative answer
has been pronounced in the following cases: *De Rochemont* v.
*N. Y. C. & N. R. R. Co.*, 71 Atl. Rep. (N. Y.) 868; *Southern
Flour & Grain Co.* v. *N. P. Ry. Co.*, 127 Georgia, 626; *Southern
Ry. Co.* v. *Brown*, 62 S. E. Rep. (Ga.) 177; *Cavanaugh Bros.* v.
*Chicago, R. I. & P. Ry.*, 72 Atl. Rep. 694;  See also *Humphreys*
v. *Hopkins*, 81 California, 551.  *Boss* v. *Chicago, R. I. & P. Ry.*,
72 Atl. Rep. 694, may be assigned to the list of cases giving a
negative answer.  In that case there was an attachment of
credits or funds representing the sending carrier's part of
transportation charges on interstate freight.  The attachment
was sustained.  In *Wall* v. *N. & W. R. R. Co.* the levy was
upon cars which were unloading.  In the case in 1 Ill. App. the
condition or situation of the cars does not clearly appear.  In
the other cases the cars were not in use when attached.  In
most of the cases there is a full and able discussion of the prin-
ciples involved.  In *Humphreys* v. *Hopkins* it was taken for
granted that the cars were subject to process, the case going off
on another point.

The answer to the question is, therefore, certainly not
obvious, and counsel, realizing it, have pressed many con-
siderations on our attention.  Their arguments result in cer-
tain contentions.  The plaintiff's contention is, that even
though the cars in question had been or were to be used in in-
terstate commerce, their attachment was not a regulation of
such commerce, and that they were as legally subject to at-
tachment as the property of any other non-resident.  The con-
tention of the defendants is an exact antithesis of that of plain-
tiff.  It is that the state laws cannot be permitted to impede
or impair interstate traffic or the usefulness of the facilities for
such traffic.  And, further, that the provisions of the Interstate
Commerce Act, providing for the establishment of through

routes, and § 5258 of the Revised Statutes, providing for the connection of railroads, exempt the cars from attachment.

In our discussion we may address ourselves to the contention of defendants. They do not contend that the laws of the State have the purpose to interfere with the interstate commerce, or are directly contrary to the acts of Congress. They do contend, however, that "to permit the instrumentalities used in the interchange of traffic by railway common carriers to be seized on process from various state courts does directly burden and impede interstate traffic within the inhibition of the acts of Congress." In other words, that the acts of Congress constitute a declaration of exemption of railroad property from attachment, and, of course, from execution as well, by reason of their provisions for continuity of transportation.

This can only result if there is incompatibility between the obligations a railroad may have to its creditors and the obligations which it may have to the public, either from the nature of its service or under the acts of Congress. Obligations it surely will have to creditors, inevitable even in providing equipment for its duties—inevitable in its performance of them. It would seem, therefore, that the contentions of the defendants are but deductions from the broader proposition that all of the property of the railroad company is put apart in a kind of civil sanctuary. And one case (*Wall* v. *Railroad Company, supra*) seems to give this extent to the exemption. Indeed, the decision in the case at bar seems to do so, the court holding, as we have seen, that the C. C. C. & St. L. Ry. Co.'s share of the compensation for carriage was as much a part of interstate commerce as the actual carriage of property. A still broader proposition under the contention might be urged. If the property have such character that all obligations of the company must yield to the public use or to the obligations imposed by Congress, the railroad company itself, it might be contended, cannot burden its property and that its property is taken from it as an asset of credit, the means, it may be, of performing the very duties enjoined upon it, and the anomaly

will be presented of the duties it is to perform becoming an
obstacle to acquiring the means of performing them. Indeed,
the further consequence might be said to follow that the rolling
stock of a railroad is exempt from taxation, at least so far as
taxation might be attempted to be enforced against the rolling
stock. We realize that a proposition may be generally ap-
plicable and, yet involve embarrassment when pushed to a
logical extreme. If this be so of the contentions of defendant,
it may be so of the counter contentions which would subject
the cars of a railroad company to attachment process, however
engaged or wherever situate.

It is very certain that when Congress enacted the Interstate
Commerce Law it did not intend to abrogate the attachment
laws of the States. It is very certain that there is no conscious
purpose in the laws of the States to regulate, directly or indi-
rectly, interstate commerce. We may put out of the case,
therefore, as an element an attempt of the State to exercise
control over interstate commerce in excess of its power. In-
deed, the questions in this case might arise upon process issued
out of the Circuit Court of the United States under the Federal
statutes. For, by §§ 915 and 916 of the Revised Statutes,
remedies "by attachment or other process," before judgment,
and "by execution or otherwise," after judgment, are given
litigants in common law causes in the Circuit and District
Courts of the United States.

The questions in the case, therefore, depend for their solu-
tion upon the interpretation of Federal laws. May the laws of
the States for the enforcement of debts (laws which we need
not stop to vindicate as necessary foundations of credit and
because they give support to commerce, state and interstate),
and the Federal laws which permit or enjoin continuity of
transportation, so far incompatible that the provisions of the
latter must be construed as displacing the former? We do not
think so. Section 5258 of the Revised Statutes is permissive,
not imperative. It removed the "trammels interposed by
State enactments or by existing laws of Congress" to the

powers of railroad companies to make continuous lines of transportation. *Railroad Co.* v. *Richmond,* 19 Wall. 584, 589. The Interstate Commerce Act, however, has a different character. It restricts the powers of the railroads. It regulates interstate railroads and makes it unlawful for them, by any "means or devices," to prevent "the carriage of freight from being continuous from the place of shipment to the place of destination." [1]

The Interstate Commerce Law therefore is directed against the acts of railroad companies which may prevent continuity of transportation. Section 5258 of the Revised Statutes was directed against the trammels of state enactments then existing or which might be attempted. In neither can there be discerned a purpose to relieve the railroads from any obligations to their creditors or take from their creditors any remedial process provided by the laws of the State, and, as we have seen, provided by Federal law as well. May it be said that such result follows from the use of property in the public service? A number of cases may be cited against such contention. We have already pointed out what might be contended as its possible if not probable consequences. In a recent case in this court a lien imposed under the law of Michigan upon a vessel to be used in domestic and foreign trade was sustained. To the contention that the enforcement of the lien while the vessel was engaged in interstate commerce was unlawful and

---

[1] Sec. 7. That it shall be unlawful for any common carrier subject to the provisions of this act to enter into any combination, contract, or agreement, expressed or implied, to prevent, by change of time schedule, carriage in different cars, or by other means or devices, the carriage of freights from being continuous from the place of shipment to the place of destination: and no break of bulk, stoppage, or interruption made by such common carrier shall prevent the carriage of freights from being and being treated as one continuous carriage from the place of shipment to the place of destination, unless such break, stoppage, or interruption was made in good faith for some necessary purpose, and without any intent to avoid or unnecessarily interrupt such continuous carriage, or to evade any of the provisions of this act.

void in view of the exclusive control of Congress over the subject, we answered: "But it must be remembered that concerning contracts not maritime in their nature, the State has authority to make laws and enforce liens, and it is no valid objection that the enforcement of such laws may prevent or obstruct the prosecution of a voyage of an interstate character. The laws of the States enforcing attachment and execution in cases cognizable in state courts have been sustained and upheld. *Johnson* v. *Chicago & Pacific Elevator Co.*, 119 U. S. 388. The State may pass laws enforcing the rights of a citizen which affect interstate commerce, but fall short of regulating such commerce in the sense in which the Constitution gives exclusive jurisdiction to Congress. *Sherlock et al.* v. *Alling*, 93 U. S. 99, 103; *Kidd* v. *Pearson*, 128 U. S. 1, 23; *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477." *The Winnebago*, 205 U. S. 354, 362.

The interference with interstate commerce by the enforcement of the attachment laws of a State must not be exaggerated. It can only be occasional and temporary. The obligations of a railroad company are tolerably certain, and provisions for them can be easily made. Their sudden assertion can be almost instantly met; at any rate, after short delay and without much, if any, embarrassment to the continuity of transportation. However, the pending case does not call for a very comprehensive decision on the subject. We only decide that the cars situated as this record tends to show that they were when attached, and the amounts due from the garnishee companies to the C. C. C. & St. L. Ry. Co., were not exempt from process under the state laws, and that the court had, therefore, jurisdiction of them and through them of the C. C. C. & St. L. Ry. Co.

*Judgment reversed and the cause remanded with directions to proceed in accordance with this opinion.*

MR. JUSTICE HOLMES took no part in the decision.