## PULLMAN CO. v. LINKE et al.

### (District Court, S. D. Ohio, E. D.   April 12, 1913.)

### No. 1,505.

**1.** Commerce (§ 80*)—Regulation—Federal Statutes.

The acts of Congress relating to interstate commerce were not intended to abrogate the attachment laws of the state, but within their proper sphere the federal acts are paramount.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 80.*]

**2.** Carriers (§ 4*)—Sleeping Car Companies—"Common Carrier."

A sleeping car company, by furnishing sleeping cars under contract with a railroad company, to be used by the traveling public, does not acquire the status of a common carrier of goods or passengers unless so declared by constitutional or statutory provision.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1, 462–478; Dec. Dig. § 4.*

For other definitions, see Words and Phrases, vol. 2, pp. 1313–1319; vol. 8, p. 7607.]

**3.** Commerce (§ 47*)—Interstate Commerce—Instrumentalities—Sleeping Cars—Attachment.

A sleeping car en route from Columbus, Ohio, to Washington, D. C., while waiting at a junction with its passengers, both interstate and intrastate, aboard to be picked up by a through train and carried to destination, was attached under a state writ and detained by the sheriff by force, compelling the passengers to disembark and accept other accommodations. *Held* that, under Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), § 1, as amended by Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1911, p. 1284), extending the term "common carrier" to include sleeping car companies, the car, at the time of its attachment, was an instrumentality of interstate commerce and was not subject to attachment under a state writ which would directly interfere with its operation in such commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*]

At Law.   Action by the Pullman Company against William Linke and others.   On final hearing.   Judgment for plaintiff.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Emmett Tompkins, of Columbus, Ohio (H. T. Wilcoxon, of Chicago, Ill., and T. M. Kirby and Wm. J. Duncan, both of Cleveland, Ohio, of counsel), for plaintiff.

Fitzgibbon & Montgomery, of Newark, Ohio, for defendant Linke.

Kibler & Kibler and F. M. Black, all of Newark, Ohio, for defendants Gillett and another.

SATER, District Judge.   The question for decision is:   Was the sleeping car in question, under the facts disclosed, subject to attachment?

―――――――――――――――――――――――――――――――――

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiff is an Illinois corporation. Prior to November 20, 1909, it had furnished a sleeping car, "Eufaula," to be used and which in fact was regularly used by the Baltimore & Ohio Railroad Company for the accommodation and transportation of passengers between the cities of Columbus, Ohio, and Washington, D. C., and intermediate stations. The car, as a part of one of the railroad company's trains, on the date named left Columbus, its initial starting point, on its east-bound trip, carrying passengers who had purchased from the railroad company continuous transportation and from the plaintiff through sleeping car accommodations on such car to points beyond as well as within Ohio; some of them being destined for Washington City. When the car reached Newark, Ohio, at 7:50 p. m., it was detached from the train and shoved by an engine on a side track to be attached to the railroad company's through train due at 8:10 p. m., coming from Chicago, Ill., and bound for eastern points, including the city of Washington. The side track physically connected the railroad company's tracks leading to Columbus with its main east and west bound tracks. While the car was on the side track with its passengers aboard, awaiting the arrival of the train from Chicago, which was on time, Linke, as sheriff of Licking county, Ohio, who was armed with a writ of attachment which had been issued in an action brought in the state court against the plaintiff by Gillett, levied upon the car, chained it to the track, and, notwithstanding the protests of passengers aboard and the railroad company's employés, refused permission to such employés and those of the plaintiff to place the car in the east-bound train to be carried to its destination. When the yard crew, in obedience to instructions from their superiors, were about to couple to the car, Linke produced a revolver and threatened to shoot any one that interfered with the car or attempted to move it. A suggestion was made by the station master, out of regard for the passengers, that, if a sleeping car was to be seized, the levy be postponed until the following morning, when a west-bound car which would have completed its journey, save a distance of about 33 miles from Newark to Columbus, could be taken; but Linke, and Gillett and his counsel, declined to act upon such suggestion. The passengers in the car, to continue their respective journeys, were compelled to abandon it and take such places as could be found for them in the New York sleepers in the east-bound train. The train was delayed about ten minutes on account of the attachment of the car and transferring the passengers. Gillett and his counsel actively aided and abetted the sheriff in his seizure and detention of the car. Subsequently, to avoid the car's continued interference with traffic, it was removed to another track, where it still remains. The plaintiff, having other property within the jurisdiction of the state court subject to attachment, appeared thereafter in that court for the purpose of its motion only, and moved for a dissolution of the attachment. The motion was sustained, but before the court had acted upon it Gillett filed an amended petition and caused a second writ of attachment to be issued and levied upon the car. This attachment was also dissolved. Before its dissolution, Gillett, whose counsel all the while remained

the same, instituted a second suit on the same claim and caused another writ of attachment to issue whereby the car was again seized. This action is still pending in the state court, and the car has thus been continuously held by virtue of a writ. The plaintiff in an appropriate manner demanded the return of the car, but the defendants at all times refused and still refuse to surrender it, and still retain it in their possession awaiting the determination of the suit pending in the state court in which the last writ of attachment was issued. The plaintiff brought this action against Linke, Gillett, and his counsel, charging the malicious and willful seizure of the car and its conversion to their own use and praying recovery of the car's full value.

[1] That the statute under which the seizure was made is a valid state law, enacted to enable creditors to collect their debts and for no other or ulterior purpose, and evinces no conscious purpose to regulate directly or indirectly interstate commerce, is not controverted; nor is it claimed, nor can it be successfully asserted, that the acts of Congress relating to interstate commerce were intended to abrogate the attachment laws of the state. Within their proper sphere, the federal acts are paramount; but beyond that, the state law, whose purpose is wholesome, is operative as against all that come within its provisions. Davis v. C., C., C. & St. L. Ry. Co., 217 U. S. 157, 30 Sup. Ct. 463, 54 L. Ed. 708, 27 L. R. A. (N. S.) 823, 18 Ann. Cas. 907. In that case the warning is sounded that interference with interstate commerce by the enforcement of attachment laws of a state must not be exaggerated. But when there is incompatibility between the obligations an interstate carrier has to its creditors and the obligations it has to the public, either from the nature of its services or under the acts of Congress, the instrumentalities of interstate commerce transportation are, for the time being, "immune from judicial process," and are "put apart in a kind of civil sanctuary," being, under such circumstances, exempt from attachment and, of course, from execution as well, by reason of the provisions of such acts for continuity of transportation and avoidance of transshipment of freight and passengers. Davis v. C., C., C. & St. L. Ry. Co., 217 U. S. page 176, 30 Sup. Ct. 468, 54 L. Ed. 708, 27 L. R. A. (N. S.) 823, 18 Ann. Cas. 907.

[2] A sleeping car company, it is true, by furnishing sleeping cars under a contract with a railroad company to be used by the traveling public, does not thereby assume or acquire the status of a common carrier of goods or passengers (Lemon v. Palace Car Co. [C. C.] 52 Fed. 262; Elliott, Railroads, § 1616; Beale, Innkeepers & Hotels, § 342; Hutchinson, Carriers, § 1130; 25 Am. & Eng. Ency. Law, 1110, 1111), unless declared to be such by some constitutional or statutory provision. It merely furnishes accommodations to the passengers of another company and performs only an auxiliary function in their transportation; but it is nevertheless engaged in a public calling. 6 Cyc. 656; Elliott, Railroads, § 1618. Section 1 of the interstate commerce act as amended June 29, 1906, 34 Stat. L. 584, provides that the term "common carrier" as used in that act shall include sleeping car companies. By virtue of this statutory provision, the plaintiff's status at the time of the seizure of the car was in legal con-

templation the same as that of an interstate carrier. The car, moreover, was an instrumentality of commerce and was when seized actually employed as such in interstate transportation.

[3] It is asserted by the plaintiff and denied by the defendants that, in view of the facts disclosed, the acts of Congress, and the commerce clause of the national Constitution, the car in question at the time of its seizure was "immune from judicial process." The views of the state courts, when required to decide upon the liability of cars to judicial process when in given attitudes and employed in interstate commerce, have been discordant, as noted in the Davis Case. No attempt will be made to review the cases there cited, or others of a kindred character which diligent counsel have pressed upon the court, or those in which the courts have passed upon the right to levy upon instrumentalities employed in the transportation of the United States mail (Harmon v. Moore, 59 Me. 428; Parker v. Porter, 6 La. 169), and which are claimed to be analogous to the case at bar. The situation of the car involved in the present case was unlike not only that of any car whose seizure was under consideration in any of the cases cited, but also that of the instrumentalities employed in the carriage of the United States mails whose attachment provoked the rule announced in the Harmon and the Parker Cases, respectively. The car was not empty, or idle, or waiting for return shipment, or unnecessarily delayed in the course of business, or in process of loading or unloading, or awaiting the commencement of a journey or the next trip. It had already entered upon a lengthy and continuous journey, bearing interstate passengers who were in no wise connected with or concerned in the controversy between Gillett and the plaintiff and who had acquired by purchase from the railroad company and the plaintiff for the whole of their respective journeys the valuable contractual rights of transportation and sleeping car accommodations on that particular car. Beale, Innkeepers & Hotels, § 365; 6 Cyc. 656; 25 Am. & Eng. Ency. Law, 1111, 1112. The switching of it from one train to another was an essential part of its journey, and while being so switched it was still in use in interstate commerce. The temporary suspension of its movements was but an incident in and did not take it out of the course of its transportation or impart to it a local character only. Johnson v. Southern Pac. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363. Having started with its load of human freight on its ultimate passage from Columbus to Washington City and being in the course of transportation to another state, it had ceased to be governed exclusively by the domestic law and had begun to be and was governed and protected by the national law of commercial regulation. Coe v. Errol, 116 U. S. 517, 525, 6 Sup. Ct. 475, 29 L. Ed. 715.

The impounding of the car delayed (briefly though it was) the transportation of all the passengers both in the car and on the train to which it was to be attached, and, in disregard of their rights and the policy of Congress favoring continuous lines and continuous carriage (section 5258, R. S. U. S. [U. S. Comp. St. 1901, p. 3564]), enforced the transshipment of interstate passengers. The transportation of passengers from one state to another is in its nature national, is com-

merce between the states, is beyond the reach of state legislation, and admits of and requires uniformity of regulation through Congress, affecting alike all the states. Bowman v. Chicago, etc., Ry. Co., 125 U. S. 465, 483, 485, 486, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; County of Mobile v. Kimball, 102 U. S. 691, 702, 26 L. Ed. 238; Barnes, Interstate Transportation, § 28; Railroad Co. v. Husen, 95 U. S. 465, 470, 24 L. Ed. 527. The attachment levied on plaintiff's car directly stopped, though temporarily, the delivery and required the transshipment of interstate passengers. It not merely incidentally and indirectly affected interstate commerce, but bore upon it so directly as to amount to its regulation. The state law, though enacted in the exercise of powers not controverted, may not be so used as to produce such a result, and the attachment must therefore be held invalid. 20 Harvard Law Review, 319, 320; Galveston Ry. Co. v. Tex., 210 U. S. 217, 227, 28 Sup. Ct. 638, 52 L. Ed. 1031; Louisville & Nashville R. Co. v. Kentucky, 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298. If the writ of attachment is susceptible of the application made of it by the defendants, litigants may at their pleasure cause the transshipment of interstate freight and passengers with its incident delay, and thereby produce great inconvenience, discomfort, and hardship, and necessarily interfere directly with the freedom of interstate commerce, continuous and rapid transportation, and the conduct of carriers in the management and disposition of their interstate business. But this may not be done. Hall v. De Cuir, 95 U. S. 485, 24 L. Ed. 547.

The charge of conversion is established, and judgment may be entered for the plaintiff; the amount thereof to be the sum agreed upon by the parties in case the plaintiff should prevail.