**STATE OF GEORGIA, Plaintiff-Appellant,**

v.

**CITY OF CHATTANOOGA, TENNESSEE, Defendant-Appellee.**

**No. 18485.**

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1969.

* The Honorable RAY McNICHOLS, United States District Judge for the District of Idaho, sitting by designation.

Harold N. Hill, Jr., Asst. Atty. Gen.,
Atlanta, Ga., for appellant, Arthur K.
Bolton, Atty. Gen., Alexander Cocalis,
Asst. Atty. Gen., Atlanta, Ga., Ben F.

Smith, Deputy Asst. Atty. Gen., Marietta, Ga., Chambliss, Hodge, Bahner & Crawford, Chattanooga, Tenn., on the brief.

Ellis K. Meacham, and Richard P. Jahn, Chattanooga, Tenn., for appellee, Eugene N. Collins, City Atty., Will Allen Wilkerson, Chattanooga, Tenn., on the brief.

Before WEICK, Chief Judge and O'SULLIVAN and EDWARDS, Circuit Judges.

WEICK, Chief Judge.

The controversy here is over a locomotive named "General," a relic of the Civil War, alleged by appellant, State of Georgia, to be—

"[A] valuable piece of equipment in the history of railroading and a historical monument to the bravery of Federal and Confederate soldiers by virtue of its having been captured by a Federal raiding party at Big Shanty (now Kennesaw), Georgia, and recaptured near Ringgold, Georgia, following what is now known as the 'great locomotive chase.'"

Georgia claims to be the owner of the "General". It asserts that when the locomotive was being shipped to it, by rail on a flatcar of the Louisville & Nashville Railroad Company (L&N) from Louisville, Kentucky, to Kennesaw, formerly Big Shanty, Georgia, the City of Chattanooga, Tennessee, on September 12, 1967, caused the locomotive to be seized pursuant to a writ of attachment and injunction obtained ex parte in the Chancery Court of Hamilton County, Tennessee, against L&N, upon allegations that the City had acquired a proprietary and prescriptive interest in the locomotive, which allegations the State alleges were false and unsupported. The attachment was executed by causing the main north-south freight line of the railroad to be blocked with automobiles placed across the tracks, thereby stopping the train. The City also instituted condemnation proceedings in the Circuit Court of said county against L&N, the Western & Atlantic Railroad Company, and the State of Georgia, to acquire ownership of the "General" by condemnation, which proceedings it later dismissed without prejudice.[1]

The State of Georgia was not a party to the state court attachment and injunction suit and no process was served on it.

L&N removed the attachment and injunction suit to the District Court on the ground of diversity of citizenship. The action is presently pending in that court.

When the State of Gerogia learned what had happened, it instituted the present action in the District Court against the City, alleging that the seizure of its property moving in an interstate shipment, constituted an undue and unlawful burden on interstate commerce, in violation of Article I, § 8, clause 3 of the Constitution of the United States, and prayed for declaratory relief that it was the lawful owner of the "General" and entitled to possession thereof. Jurisdiction of the Court was based on 28 U.S.C. § 1331(a), which provides as follows:

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

Specifically, Georgia claims that this case arises under the Constitution and laws of the United States because the attachment of the locomotive moving in an interstate shipment, and the institution of the condemnation action in which

---

1. The bringing of a condemnation action would seem to be inconsistent with the City's claim in the attachment case that it had acquired a proprietary and prescriptive interest in the locomotive. There may also be some question as to the propriety of an attachment proceeding which is the usual action to subject property to the payment of a debt.

an ex parte injunction was obtained, constituted an arbitrary misuse of judicial power and created an undue and unreasonable obstruction of interstate commerce.

The District Judge granted the City's motion to dismiss Georgia's complaint for lack of jurisdiction over the subject matter. It was his view that there was no "federal question" in the case; that Georgia's suit constituted a collateral attack upon the City's attachment and injunction suit; that Georgia's suit was to adjudicate its ownership and right to possession of the locomotive, which has no relevance to an undue burden on interstate commerce. This appeal followed. We reverse.

In our opinion, Georgia's claim to ownership and right to the possession of the "General" may not be treated in isolation from its principal contention that the wrongful seizure of its property moving in interstate commerce under the circumstances of this case constituted a violation of the Constitution.

■ We agree that the mere fact that a shipment is being moved in interstate commerce does not in and of itself render it immune from attachment in a state court proceeding *where the court has jurisdiction.* Davis v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co., 217 U.S. 157, 30 S.Ct. 463, 54 L.Ed. 708 (1910). In that case the court balanced the claim of undue burden on interstate commerce against the right of the state, through its courts, to collect a debt owing by the carrier, which was the defendant. As we will point out below, the attachment in the present case not only constituted an undue burden on interstate commerce, but it also constituted a taking of the state's property without due process of law in violation of the Fourteenth Amendment to the Constitution.

■ Georgia was not made a party defendant to the City's attachment suit and was never served with process. Georgia would not be bound by any judgment rendered in said action and could collaterally attack it.

■ The writ of attachment against Georgia's property under the circumstances of this case "necessarily and unreasonably burdens interstate commerce," Atchison, Topeka & Sante Fe Ry. Co. v. Wells, 265 U.S. 101, 44 S.Ct. 469, 68 L.Ed. 928 (1924)[2]; Davis v. Farmers' Co-Operative Equity Co., 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996 (1923). It operated to deprive the state of its property without due process of law in violation of the Fourteenth Amendment to the Constitution. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1964); Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1913).

■ The complaint stated facts indicating that there was a substantial federal question in the case sufficient to confer jurisdiction on the District Court even though it did not specifically enumerate all of the constitutional violations which the facts justified. It was error to dismiss it. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ The City argues that Georgia had the right to and should have intervened in the state court attachment and injunction proceeding which was removed to the District Court. Assuming that Georgia had the right to intervene, its failure to do so would hardly confer jurisdiction on the state court over it. Western Union Tel. Co. v. Foster, 247 U.S. 105, 38 S.Ct. 438, 62 L.Ed. 1006 (1918); Brown v. Wright, 137 F.2d 484 (4th Cir.1943). Furthermore, the State could not intervene without causing the District Court to lose jurisdiction.

2. The Court distinguished the case of Davis v. Cleveland, C., C. & St. L. Ry. Co., supra.

**834**

Humble Oil & Ref. Co. v. Sun Oil Co., 190 F.2d 191, 197 (5th Cir.1951).

The judgment of the District Court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.