## THE STATE ex rel. ST. LOUIS, BROWNSVILLE & MEXICO RAILWAY COMPANY v. WILSON A. TAYLOR, Judge of Circuit Court.

### In Banc, April 28, 1923.

1. **INTERSTATE SHIPMENT: Injury to Goods: Foreign Carrier: Jurisdiction: Attachment of Connecting Carrier.** If a shipper by his petition brings himself within the provisions of the Carmack Amendment, he can maintain a suit in the courts of this State against a foreign corporation, which has no agent or office or line of railroad in this State, to recover damages for injury to goods shipped by said railroad, as the initial carrier, from a point in the foreign state to their destination outside of this State, by summoning as garnishee another railroad company which has an agent in this State upon whom process may be served and to which such goods had been delivered as a connecting carrier and over whose line they passed.

   *Held,* by GRAVES, J., dissenting, that jurisdiction cannot be acquired over a defendant residing outside the territorial jurisdiction of the court, by a foreign attachment, in cases arising under the Carmack Amendment.

2. ———: ———: **Carmack Amendment: Liability of Initial Carrier for Another's Negligence.** The Carmack Amendment to the Interstate Commerce Act (Chap. 3591, Pt. 1, p. 595, 34 U. S. Stat.) requires the initial carrier to issue a bill of lading to the destination of the goods received for shipment whether such shipment is to be wholly over its own lines or over its lines and those of a connecting carrier, and enables the holder to look to the initial carrier for loss or injury to the goods shipped, whether caused by the initial carrier or the connecting carrier moving them *en route* to their destination. It makes the connecting carrier the agent of the initial carrier, and makes it answerable for the negligence or acts causing loss or injury to the goods.

3. ———: ———: **Cause of Action Under Carmack Amendment: Presumption.** A petition alleging that a shipper placed with a foreign railroad company (which has no line of railroad outside of

State  ex rel. Railroad v. Taylor.

said foreign state or any agent in this State) a carload of cabbage, in good, sound and merchantable condition, to be shipped from a certain point in said foreign state to a designated point in another foreign state, over the railroad of said company, and that said shipment was received by said company and transported to its destination; that plaintiff purchased said commodities from the shipper and became consignee thereof; that said company, in violation of its common-law duty as a common carrier, so negligently and carelessly transported said cabbage that it was spoiled, deteriorated and decayed and so unmerchantable and useless as to be a total loss on its arrival at its destination, states a good cause of action under the Carmack Amendment, although it does not expressly allege that the railroad company issued a receipt or bill of lading to destination.

*Held*, by GRAVES, J., dissenting, that, where the petition alleges that the goods were delivered to defendant in good condition, but does not allege where they were injured or damaged, the presumption is that they remained in good condition until the last moment in which they could be damaged.

4. ———: ———: ———: Bill of Lading: Failure to Issue. A railroad company, which received goods for transportation from a point in one state to a point in another, was required by the Carmack Amendment to issue a through bill of lading, and the presumption will be indulged that it did what the law required it to do; but if it issued no such bill, it could not, by its failure or refusal so to do, limit its liability for loss or injury to the shipment occurring on its own lines, but is liable for any negligent loss or injury occurring on its own or connecting lines.

5. ———: ———: ———: Negligence: Allegation of Common-Law Duty. An allegation that "in violation of its common-law duty as a common carrier the defendant transported said shipment so negligently and carelessly" that said cabbage arrived at its destination in a spoiled and unmerchantable condition does not confine plaintiff to proof of negligence upon defendant's own line, but, absent any allegation to the contrary, should be construed as charging the loss or injury was caused by the delivering carrier. Besides, negligence is clearly within the Carmack Amendment, which does not change the common-law duty of the carrier, which is that the carrier, receiving goods in good condition, is liable for all loss or injury not caused by the act of God or the public enemy, unless due to the inherent nature or quality of the goods or the fault of the shipper or owner. ɩ

6. ———: Foreign Corporation: Action in State Court: Attachment of Connecting Carrier: Existing Law. The consignee and owner of a shipment of goods, delivered in another state to a railroad

company which has no line of railroad or office or agent in this State, to be transported to its destination in another foreign state, can maintain against such initial carrier an action for damages for injury to the goods in transit, by summoning the connecting carrier, which has lines and a place of business in this State, as garnishee. Under the Carmack Amendment, notwithstanding the shipment is interstate commerce and the defendant is the initial carrier and a foreign corporation, such an action may be maintained by attachment in the state court regardless of its jurisdiction over the person of defendant, in the same manner as in an ordinary action. The shipper had such right under the interstate commerce law and the state statutes before the enactment of the Carmack Amendment, and that right was preserved to him by its provision declaring that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

*Held*, by GRAVES, J., dissenting, that "existing law" as used in the Carmack Amendment means existing common law as understood in the Federal courts, and excludes changes effected by State statutes; and under no existing law could a Federal court acquire jurisdiction of the cause by attachment without personal service upon defendant, and in consequence no State court can acquire jurisdiction over the initial carrier by attachment proceedings against the connecting carrier, whose act presumably caused the injury to the goods.

7. ———: ———: ———: ———: Pertains to Remedy: Federal Rule: Substantive Right. Attachment affects the remedy, is procedural in character—the means for enforcing a right. The Carmack Amendment to the Interstate Commerce Act required every common carrier, receiving property for transportation from one state to another, to issue a receipt or bill of lading therefor, and made such initial carrier liable to the lawful holder for any loss, damage or injury to such property caused by it or any other common carrier to which such property is delivered or over whose lines of railroad it passes, and further declared that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Under both the Federal and State law existing when said amendment was enacted, a plaintiff, having a cause of action against a citizen of another state who has property in this State, could, without personal service upon him, maintain against him in the courts of this State an action by attachment of said property; and under the pre-existing law the holder of a bill of lading could sue the connecting carrier in the State court for loss or injury to an interstate shipment caused by its own fault.

State  ex rel. Railroad v. Taylor.

These rights the Carmack Amendment did not purport to take away, but on the contrary other .acts of Congress preserve an attachment begun in the State court when such action is removed to the Federal court .where such attachment could not have been originally maintained in the Federal court.    It is, therefore, *held*, that the shipper, or owner of the bill of lading issued by a foreign railroad company, which has no line of railroad in this State and no agent here upon whom personal service may be had, may, by summoning as garnishee a connecting carrier which has a place of business in this State, maintain, in the courts of this State, an action against such initial carrier for damages to goods injured while *cn route* from the point of shipment in such foreign state to their destination in another foreign state.

*Held*, by GRAVES, J., dissenting, that the shipper's right of action against the initial carrier for damages arising from injury to an interstate shipment occurring rnywhere between the point of shipment and destination arises only under the Carmack Amendment; and if a Federal statute creates a right of action and suit is brought to enforce such right, such suit arises under the Federal law creating the right.    Prior to the enactment of the Carmack Amendment the right to sue the initial carrier for damages sustained in an interstate shipment for injury or loss caused by the connecting carrier did not exist, and under the Federal rule jurisdiction of Federal courts over a defendant residing outside of its territorial jurisdiction could not be obtained by attachment proceedings, but jurisdiction over the person of defendant by personal service within the court's territorial jurisdiction was required before attachment could be maintained; and the State court, in actions based on a Federal statute has no more power in the same district than has the Federal court.

*Held*, also, that the right to sue out an attachment is a substantive right, and not mere procedure, and the acquisition of jurisdiction is a primary substantive right; and since jurisdiction by a foreign attachment and without personal service upon defendant is denied by the Federal rule, it must be denied to a State court in a case arising under a Federal statute in which no personal service upon defendant has been obtained.

## Prohibition.

PRELIMINARY RULE DISCHARGED.

*J. F. Green, T. T. Railey* and *H. H. Larimore* for relator.

(1)   A general liability created by statute without a remedy may be enforced by an appropriate common-law action.   Mank v. Franklyn, 120 U. S. 756; Pollard v. Bailey, 20 Wall. 520.   (2)   Any suit in which the initial carrier is attempted to be held liable for damage to inter-state shipments occurring upon the line of connecting carriers is one arising under the law of the United States. Fargo & Co. v. Cuneo, 241 Fed. 726; Railway Co. v. Cotton Oil Co., 229 Fed. 11.   (3)   The Carmack Amendment partakes both of the nature of a right of action and a remedy.   Railway Co. v. Riverside Mills, 219 U. S. 206; Railway Co. v. Wallace, 223 U. S. 491.   (4)   The phrase, "existing law," as used in the Carmack Amendment, means existing common law as understood in the Federal courts, and excludes changes effected by State stat-utes.   Adams Exp. Co. v. Croninger, 226 U. S. 503; Ly-saght v. Railway Co., 254 Fed. 353.   (5)   Attachment cannot be maintained in the Federal court unless the court has jurisdiction over the person of the defendant. Big Vein Coal Co. v. Read, 229 U. S. 38; Laborde v. Ubarri, 214 U. S. 174; Ex parte Railway Co., 103 U. S. 796; Levy v. Fitzpatrick, 15 Pet. 171; Toland v. Sprague, 12 Pet. 329; United States v. Brooke, 184 Fed. 341; Har-land v. Tel. Co., 40 Fed. 310; Dormitzer v. Bridge Co., 6 Fed. 218.   (6)   Whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, but whatever goes to the substance of the obligation and effects the rights of the parties is governed by the law of the place where the right was acquired.   Railway Co. v. Harris, 247 U. S. 371; Railway Co. v. Gray, 241 U. S. 338; Railway Co. v. White, 238 U. S. 511; Pritchard v. Norton, 106 U. S. 129; Slater v. Railway Co., 194 U. S. 126.   (7)   In an action based on a Federal statute, all substantive matters, such as burden of proof, are controlled by the rule of the Federal courts. Railway Co. v. Prescott, 240 U. S. 641; Baker v. Schaff, 211 S. W. 103; Berry v. Railway Co., 208 S. W. 623.   (8) The right to bring a non-resident defendant into court by publication or attachment is not a mere matter of

practice, but involves substantive rights.   Haddock v. Haddock, 201 U. S. 562; Pennoyer v. Neff, 95 U. S. 714; Harland v. Tel. Co., 40 Fed. 311; Butler v. Young, 1 Flip. 276.   (9) When Congress has taken the particular subject-matter in hand, coincidence is as effective as opposition, and a State law is not to be declared a help because it attempts to go farther than Congress has seen fit to go.   Railway Co. v. Varnville, 237 U. S. 597.

*Leahy, Saunders & Walther* and *J. L. London* for respondent.

(1) Attachment under State statute on a non-resident defendant without personal service will lie upon interstate shipments, when there is no interference with interstate commerce.   Davis v. Big Four Railroad Co., 217 U. S. 157; Chicago, R. I. & P. Railroad Co. v. Sturm, 174 U. S. 710; Harris v. Balk, 198 U. S. 225; Martin v. West, 222 U. S. 191.   (2)   The Carmack Amendment has no application where a suit, based on negligence, is brought and where it is averred that the defendant caused the damage through defendant's negligence.   Davis v. Big Four Railroad Co., 217 U. S. 157; Railway Co. v. Mounts, 44 Okla. 359; Cincinnati & Tex. Pac. Ry. v. Rankin, 241 U. S. 326.   (3)   The Carmack Amendment does not provide an exclusive remedy, but expressly provides that the act "shall not deprive any holder of a bill of lading of any remedy or right of action which he has under existing law."   Ga. Railway Co. v. Blish Milling Co., 241 U. S. 190;   Bichlmeir v. Minn. Railway Co., 159 Wis. 404; Adams Express Co. v. Croninger, 226 U. S. 491; Elliott v. Railway Co., 35 S. D. 57; Western Railway Co. v. White Prov. Co., 142 Ga. 246.   (4) The defendant was liable to the plaintiff at common law for the defendant's acts of negligence and for its violation of its common-law duty as a common carrier.   Duvall v. La. Western Railway Co., 135 La. 189; Cudahy Packing Co. v. Atchison, T. & S. F. Railway Co., 193 Mo. App. 572.   (5)   A proceeding in attachment is only incidental to a cause of action and is not the cause of action itself.   R. S. 1919, sec. 1725; La-

borde v. Ubarri, 214 U. S. 174. (6) Garnishment is incidental to a suit in attachment, and like attachment may be brought in aid of the cause of action, but is not a cause of action proper. R. S. 1919, sec. 1846; Tinsley v. Savage, 50 Mo. 141. (7) The mere fact that a Congress has legislated on subject-matter does not preclude the bringing of a suit in the State court, and the substantive liability fixed by Federal statute, whether the suit be brought against the initial or succeeding carrier, may be enforced by a State as well as a Federal court. Smeltzer v. St. Louis Ry. Co., 168 Fed. 420; Galveston Ry. Co. v. Wallace, 223 U. S. 481; Bichlmeir v. Minn. Ry. Co., 159 Wis. 404. (8) Even if the Federal rule applies in determining the meaning of "existing law" this only refers to the cause of action proper, and not to any remedy such as attachment or garnishment which may be used as an aid to the main action, and such a cause of action is maintainable. Davis v. Big Four Railroad Co., 217 U. S. 157; Chicago, R. I. & P. Railroad Co. v. Sturn, 174 U. S. 710; Harris v. Balk, 198 U. S. 225.

DAVID E. BLAIR, J.—This is an original proceeding in this court, whereby, upon petition of relator, we issued our preliminary rule in prohibition against respondent as judge of Division One of the Circuit Court of the City of St. Louis, commanding him to appear and show cause why he should not be prohibited from hearing or taking further cognizance of or action in a certain cause pending in Division One of said circuit court, wherein the American Fruit Growers (hereinafter referred to as plaintiff) is plaintiff, and relator in this case is defendant.

The return of respondent is in effect a demurrer to the petition, upon which our preliminary rule issued. It raises no issue of fact, but asks that the preliminary rule be discharged because the petition does not state facts sufficient to constitute a cause of action in prohibition. Relator filed its motion for judgment on the pleadings.

The contention of relator is that the plaintiff in the case pending in the said circuit court is seeking to hold

relator liable in damages as the initial carrier in certain interstate shipments under the Carmack Amendment to the Interstate Commerce Act for loss sustained by plaintiff on certain carload shipments made from points in the State of Texas to points outside said State over the lines of relator and connecting carriers. Relator has no line of railroad outside of Texas, and has no office in Missouri, and no agent in this State through whom personal service upon it can be obtained. Attachment was issued, and the Illinois Central Railroad Company was summoned as garnishee.

Relator contends that the plaintiff under its petition is seeking to hold it liable for damages caused by the negligence of its connecting carriers; that plaintiff's right to proceed for such negligence is a right conferred by the Carmack Amendment and is a Federal right, and can only be enforced by means of remedies granted by the Federal law; that under the Federal rule such suits can only be maintained in the district wherein personal service can be had upon relator, and that attachment cannot be maintained unless such personal service can also be obtained; that the same rule applies in the State courts in cases brought under the Carmack Amendment as obtains under the Federal rule.

On the other hand, respondent contends that the petition states a cause of action for damages against relator only upon its common-law liability as a common carrier for its own negligence, and does not predicate relator's liability upon its liability as the initial carrier under the Carmack Amendment; that even if said petition does seek so to hold relator, there is nothing in the amendment depriving State courts of the procedural right to attach the property of the carrier found within the jurisdiction of the State court, without regard to whether or not personal service can be had upon such carrier.

It, therefore, becomes necessary to examine the petition filed in the circuit court to determine the nature of the suit. Such petition is in three counts.

The first count alleges that on April 30, 1920, a car-

298 Mo.—31

load of bulk cabbage, in good, sound, merchantable condition, was consigned by one George A. Arts from La Feria, Texas, to Pittsburg, Pennsylvania, over the railroad line of relator, and was purchased by the plaintiff, and it became consignee thereof, and that in violation of its common-law duty as a common carrier relator so negligently and carelessly transported said carload of cabbage that it was spoiled, deteriorated and decayed so that it was useless and unmerchantable and a total loss upon its arrival at destination. Judgment is prayed for the market value of such cabbage.

The second count alleges that on April 20, 1920, a carload of bulk cabbage, in good, sound, merchantable condition, was consigned by George A. Arts over relator's railroad line from Mercedes, Texas, to Cleveland, Ohio, and was sold to plaintiff, who became consignee thereof, and, in violation of its common-law duty as a common carrier and through relator's carelessness and negligence, said carload of cabbage arrived at destination in a yellow, deteriorated and decayed condition, so that a large part thereof was useless and unmerchantable, causing loss to plaintiff, for which it prays judgment.

The third count alleges that on January 21, 1921, Hodge & Howell at Harlington, Texas, consigned over relator's railroad a carload shipment of vegetables, consisting of carrots, beets, cabbage, lettuce and spinach, in good, sound, merchantable condition, to St. Louis, Missouri, and that plaintiff purchased said carload of vegetables and became consignee thereof; that in violation of relator's common-law duty as a common carrier and through its carelessness and negligence said carload of vegetables arrived at destination in a spoiled, deteriorated and unmerchantable condition; and that plaintiff was forced to sell same at a loss, for which it prays judgment.

The total damages sought to be recovered in the three counts is $1,962.88.

That portion of the amendment to the act to regulate commerce known as the Carmack Amendment, which

is involved here, is found in Chapter 3591 of 34 U. S. Statutes at Large, part 1, at page 595.  It reads as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor arid shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

It is obvious that the foregoing provisions did not change the liability of any carrier for its own negligence in handling shipments over its own lines (Cincinnati & Tex. Pac. Ry. v. Rankin, 241 U. S. 1. c. 326), but required the receiving or initial carrier to issue a bill of lading to destination, whether such shipment was wholly over its own lines or over its own lines and those of connecting carriers, and enabled the shipper or holder of such bill of lading to look to such receiving carrier for recovery for loss, damages or injury to such shipment, whether caused by such receiving carrier or any connecting carrier moving it *en route* to destination.  It simply makes the connecting carriers agents of the re-

ceiving carrier and makes it answerable for their negligence or acts causing loss, damage or injury, with the right in the receiving carrier to recover from the carrier at fault for any loss paid under such bill of lading. The evident purpose of such amendment was to do away with the necessity of the holder of a bill of lading making an investigation to determine which carrier was at fault, if other than the receiving carrier moved the shipment, and to leave the question of ultimate liability to be settled among themselves by the interested carriers.

I. Does the petition state a cause of action under the Carmack Amendment? We think it does. Relator has no railroad line outside the State of Texas, and since it accepted the shipments for destinations outside the State of Texas, part of the haul was over lines of connecting carriers, although such fact is not specifically alleged in plaintiff's petition. The three counts of the petition in the case pending before respondent are substantially alike in respect to the character of the shipments. They were consigned over the railroad of relator from different stations in Texas to destinations outside of Texas. Take the first count as characteristic of all. It does not allege that relator issued a receipt or bill of lading to destination, but does allege that the shipper placed the shipment in the possession of relator and the same was transported by it in a certain specified car with destination Pittsburg, Pennsylvania. This is equivalent to an allegation that relator issued a through bill of lading to said destination. Relator received the shipment for transportation from a point within one state to a point within another state. In such case the carrier is required by the amendment to issue a through bill of lading, and the presumption will be indulged that relator did what the law required it to do. Relator could not have limited its liability to loss, damage or injury occurring upon its own lines if it had attempted to contract to that effect when it undertook to transport the

*Cause of Action Under Carmack Amendment.*

shipment over its own and connecting lines.  [Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, l. c. 205.]

There is nothing in the allegation that "in violation of its common-law duty as a common carrier the defendant transported the said shipment so negligently and carelessly" that said shipment arrived at destination spoiled, etc., which confines the plaintiff to proof of negligence of relator upon its own railroad line.  There is no allegation that the negligence occurred while the shipment was on the line of relator.  For anything appearing in the petition, the damage may have been caused while the shipment was on the line of a connecting carrier outside of Texas.  Absent allegations to the contrary, the statement that loss or damage occurred to a shipment moving over two or more connecting railroads, the petition should be construed as charging that the loss or damage was caused by the delivering carrier, since the presumption is that such loss occurred on the lines of such delivering carrier, unless the contrary is alleged or proven.  [Chicago & N. W. Ry. Co. v. Whitnack Produce Co., 42 Sup. Ct. Rep. 328; Charleston & Car. Railroad v. Varnville, 237 U. S. 597, l. c. 602.]

Nor is the situation changed by the fact that the petition alleges the loss was occasioned by carelessness and negligence and in violation of the common-law duty of relator as a common carrier.  Such negligence is clearly within the Carmack Amendment.  It does not change the common-law duty of the carrier.  Plaintiff need not have alleged that the loss was due to negligence.  All that was necessary was to allege the delivery of the shipment to relator in good, sound condition, and its delivery at destination in bad condition.  The carrier is liable under the common law for all loss or damage not caused by the act of God or the public enemy, unless due to the inherent nature or quality of the shipment or the fault of the shipper or owner.  [10 C. J. 110.]  With the foregoing exceptions the carrier is answerable in damages for loss incurred en route, including its own negligence. The Carmack Amendment makes the acts of connecting

carriers the acts of the receiving carrier, and their negligence its negligence so far as the shipper or owner is concerned. Our conclusion is that the petition sufficiently alleged facts which, if proven, would compel relator to respond in damages for loss occurring upon the lines of its connecting carriers, as well as upon its own line, and that the petition, absent definite allegation that the damage occurred on relator's line of railroad, states a cause of action under the Carmack Amendment.

II. It must next be determined whether plaintiff can proceed against relator under such amendment in the courts of this State by attachment when personal service cannot be had upon it here. Relator contends for the application of the Federal rule, that attachment can only be maintained where the court has jurisdiction over the person of the defendant. [Big Vein Coal Co. v. Read, 229 U. S. 31; Laborde v. Ubarri, 214 U. S. 173; Ex parte Railway Co., 103 U. S. 794; Toland v. Sprague, 12 Peters, 300, l. c. 329.]

*Jurisdiction by Attachment.*

On the other hand, respondent contends that suit may be maintained by attachment in the State court under the Carmack Amendment, regardless of jurisdiction of the court over the person of a defendant, in the same manner as in an ordinary action; that the shipper had such right before the Carmack Amendment under the interstate commerce law and the statutes of this State, and that such rights were preserved to the shipper by the provision in the Carmack Amendment "that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Relator contends this provision preserves only the remedy or right of action under existing Federal law.

In Adams Express Company v. Croninger, 226 U. S. 503, Mr. Justice LURTON said: "To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would

preserve rights and remedies under existing State laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former.''

In Lysaght v. Lehigh Valley Ry. Co., 254 Fed. 351, HAND, J., said: ''The phrase 'existing law' means existing common law as understood in the Federal courts, and excludes changes effected by state statutes.''

In Southern Express Co. v. Byers, 240 U. S. 612, Mr. Justice McREYNOLDS said: ''Manifestly the shipment was interstate commerce; and, under the settled doctrine established by our former opinions, rights and liabilities in connection therewith depend upon acts of Congress, the bill of lading and common-law principles accepted and enforced by the Federal courts.'' See also Southern Ry. v. Prescott, 240 U. S. 632, l. c. 639; N. Y. & Norfolk Railroad v. Peninsula Exchange, 240 U. S. 34-38; Charleston & Car. Railroad v. Varnville Co., 237 U. S. 597-603.

The quotation above made from Mr. Justice LURTON in the Croninger Case illustrates the character of rights and remedies preserved by the proviso. Under the pre-existing Federal law the holder of a bill of lading could sue a connecting carrier for loss, damage or injury caused by its own fault and this right was not taken away by the amendment. The same right could have been enforced in the State court. The right to proceed in the State courts was recognized by and was a part of the existing Federal law. It is unlikely Congress intended to deprive the State court of the power to enforce rights previously recognized and enforceable in both jurisdictions. If it had so intended, it is reasonable to assume it would have so declared in the amendment in unequivocal language. It would appear that its silence amounts to sanction of jurisdiction of State courts previously exercised. Referring to the illustration of Mr. Justice LURTON, the most reasonable con-

struction to be given to the proviso is that it did not limit the holder of a bill of lading to a suit against the initial carrier if he was able to show a right to recover directly against any succeeding carrier upon whom fault for such loss could be fastened, especially as the connecting carrier may have been more conveniently proceeded against.   If such right was previously enforceable in the State courts also, well and good.   The proviso did not take it away.

It is the expressed public policy of the Federal Government not only not to resist the jurisdiction of the State courts in the enforcement of the provisions of the Interstate Commerce Act, but on the contrary to encourage resort to the jurisdiction of the State courts. For example, such policy is shown by the amendment of January 20, 1914.   Prior to that amendment suits and proceedings arising under any law regulating commerce were removable to the Federal courts without regard to the amount involved.   [36 Stats. at Large, pp. 1091, 1092, sec. 24, par. 8.]   The amendment of January 20, 1914, limited such removal to cases where the amount involved exceeds the sum of $3,000.

Again it is provided in the Federal Employers' Liability Act (4 U. S. Compiled Statutes 1913, sec. 8662) not only that the State courts have concurrent jurisdiction with the Federal courts in enforcing the provisions of the act, but that when an action is brought thereunder in the State courts of competent jurisdiction, such case is not removable to the Federal courts.

Relator insists that because Congress has not given the Federal courts jurisdiction by attachment, except in districts where the defendant may be personally served, the Carmack Amendment gives the holder of a bill of lading a right to proceed in the State court only where personal service may be had upon the defendant. Congress has clearly recognized the validity of attachments in State courts in removal cases when it provided (36 Stats. at Large, pt. 1, p. 1098, sec. 36, chap. 231) that "when any suit shall be removed from a State court.

to a district court of the United States, any attachment
or sequestration of the goods or estate of the defendant
had in such suit in the State court shall hold the goods
or estate so attached or sequestered to answer the final
judgment or decree in the same manner as by law they
would have been held to answer final judgment or de-
cree had it been rendered by the court in which said suit
was commenced.'' The section quoted from makes no
exceptions. If Congress did not intend to recognize the
provisions of state laws authorizing attachment of the
property of the defendant found within its jurisdiction,
regardless of summons upon the defendant, it would have
provided that, upon removal to the Federal court of
cases where the defendant could not be personally served,
the attachment should be dissolved. The result is that
the Federal courts have jurisdiction to try cases upon
removal from the State courts where goods are attached
and defendant has not been personally served when the
same court does not have original jurisdiction to do so.
There is nothing in the Carmack Amendment indicating
a different policy in the enforcement of its provisions.
It should be so construed only when a construction deny-
ing complete state jurisdiction clearly appears from the
language used.

The precise question appears to be new so far as
either the Federal or State appellate courts are con-
cerned. Two cases are cited by relator bearing squarely
upon the question. Both cases were decided by trial
courts. There is before us an unofficial copy of an opin-
ion written by United States District Judge PAGE MORRIS
in the case of Pratt v. D. & R. G. W. Ry. Co. and C.,
St. P. M. & O. Ry. Co., et al., Garnishees (said by counsel
for relator to be reported in 284 Fed. 1007). The above
opinion is based upon an opinion written by Judge
CRUMP, Presiding Judge in the Law and Equity Court
at Richmond, Virginia, in a case entitled, Neale v. Illi-
nois Central, decided December 28, 1921, and so far as
we are aware not anywhere officially reported. The
facts in both cases are quite similar to those in the case

before us and our concurrence in the conclusions therein reached would dispose of this case adversely to the jurisdiction of the respondent. The cases are in no wise controlling upon us and are only persuasive authority in so far as we conclude they are well reasoned. Since Judge MORRIS rested his conclusion upon the reasoning of Judge CRUMP, the opinion of the latter is the one to be chiefly considered. The reasons controlling the conclusion reached by Judge CRUMP appear in the following quotation from his opinion as quoted by Judge MORRIS:

"It seems to me that those prominent features of the Federal law show plainly that a proceeding in foreign attachment under the statutes of Virginia, cannot give the right to the court to pass upon the liability of the initial carrier, unless it is brought before the court by proper process or voluntarily appears. The principal defendant in such a proceeding would be deprived of the right to rebut the presumption against it, although the loss or damage occurred on the line of a connecting carrier, and the ascertainment of the amount of the plaintiff's claim, as a preliminary to subjecting the foreign defendant's property to its payment, would not be a judgment upon which the initial carrier could recover against the connecting carrier. It is now well settled that the cause of action arising under the Interstate Commerce Act may be enforced by the appropriate remedy in a State court, but it would be denying to the initial and the connecting carrier, ultimately liable, due process of law, for the court to pass upon their rights in the absence of the initial carrier, upon whom the statute places the burden of making defense for all the carriers concerned."

The heart of the argument is that "it would be denying to the initial and the connecting carrier, ultimately liable, due process of law, for the court to pass upon their rights in the absence of the initial carrier, upon whom the statute places the burden of making defense for all the carriers concerned."

Numerous illustrations could be given where the

same reasons might be urged as to the right of a plaintiff to proceed against a defendant, not personally served, where no possible doubt can exist about such plaintiff's right so to proceed.  For example, A, residing in Missouri, holds a note indorsed to him by B, a resident of Texas, who received the note from C, the original payee. A, having been defeated in a suit against D, the purported maker of the note, on the ground that the note was a forgery, finds property belonging to B in Missouri, files suit against him here and attaches such property.  Would any one contend that B is entitled to personal service and a personal judgment against him because he in turn must recoup his loss from C, the purported payee?

Again, A is in B's employ in Texas and is injured in that State by B's negligence.  C has written an employer's liability policy indemnifying B against loss by reason of any judgment obtained against him by his employees.  After the injury C disclaims liability on the policy.  A moves to Missouri and, there finding property belonging to B, files suit for damages and attaches such property.  Must the suit abate because B was not personally served and must look to a suit on the policy against C to recoup his loss?

Under both illustrations the plaintiff would be entitled to maintain the suit in this State and attach any property of the defendant found therein, regardless of personal service.  Yet such seems to be the most decisive consideration in Judge CRUMP's reasoning.  He does not base his ruling upon any language in the Carmack Amendment which can be fairly construed as denying the right of attachment in the State court against the unserved non-resident initial carrier.  He bases it upon the creation of a new liability under the act requiring the initial carrier to respond for loss or damage caused by a succeeding carrier and giving the initial carrier the right to recover against the carrier at fault.  Yet, the liability thus created by the act is not essentially different, except in the manner of its creation, from the liability arising under the illustrations we have used.

One is created by an act of Congress, the other by contract out of which such liability grows. The substantive rights of the initial carrier are not violated to any greater extent than are those of any defendant whose property is attached under comparable circumstances. Attachment affects the remedy. It is procedural in character, a means for enforcement of a right. The rights or liabilities growing out of a contract or inherent in it or created by a statute are not enlarged or diminished by the suing out of an attachment. As said by Mr. Justice MATTHEWS in Pritchard v. Norton, 106 U. S. 1. c. 129:

"Whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

We find ourselves unable to yield our concurrence in the conclusion reached by the learned Virginia judge or the learned United States district judge who adopted his opinion. Congress has encouraged the use of the state jurisdiction in cases arising under the Interstate Commerce Act. It even gives effect to attachments in cases after removal, where such attachment could not have been maintained originally in the Federal courts. Our own statutes authorize the very character of proceeding we are here asked to prohibit. There is no language in the Carmack Amendment which specifically denies the State courts the right to proceed as respondent has proceeded. It seems a strained and unnatural construction to put upon the amendment as it is written to hold that it denies the plaintiff the benefit of attachment without personal service upon the defendant. In the absence of an authoritative expression from the Federal appellate courts, we will not adopt a construction which tends to impair the efficiency of procedure authorized by our own statutes and designed to facilitate enforce-

ment of lawful demands of the citizens of this State against residents of other states who have property here.

We hold that respondent is acting within his appropriate jurisdiction and order the preliminary rule discharged. All concur, except *Graves, J.,* who dissents in separate opinion.

GRAVES, J. (dissenting).—I do not concur in the views of my learned brother writing the majority opinion in this case. I agree to the doctrine announced by the Virginia court, and the Federal court, cited and discussed in the opinion. These cases rule, and they are the only cases upon the exact point involved here, that jurisdiction cannot be acquired as to a defendant not residing within the territorial jurisdiction of the court, by a foreign attachment, in cases arising under what is familiarly known as the Carmack Amendment. Applying the doctrine of these cases, our preliminary rule in prohibition should be made absolute.

I.   This is purely an action created by Federal law. This law for the first time created an absolute liability against the initial carrier. The petition in this case does not aver where the damage occurred, but it does aver that the freight was delivered in good condition to the initial carrier, and was damaged when delivered by the connecting carrier. There is no allegation that the damages occurred on relator's line. In this situation the presumption is that the property remained in good condition until the last moment when it could be harmed. [Railway Co. v. Varnville Co., 237 U. S. 602.] The action is clearly one based upon the Carmack Amendment, and is therefore a right of action arising under the laws of the United States. [Wells Fargo & Co. v. Cuneo, 241 Fed. l. c. 727; Alabama Great Southern Ry. Co. v. American Cotton Oil Co., 229 Fed. 11.]

This statute not only gives the shipper an absolute right of action against the initial carrier, but it gives the inital carrier a right of action over against the particu-

lar carrier which permitted the damages to be done.  If a Federal statute creates a right of action, and suit is brought to enforce such right, such suit arises under the law creating the right.  [McGoon v. Ry. Co., 204 Fed. 998; Alabama Great Southern Ry. Co. v. American Cotton Oil Co., 229 Fed. 11.]

II.  Like actions under the Federal Employer's Liability Act, suits under the Carmack Amendment can be brought in State courts, and if for less than $3,000 cannot be removed therefrom to a Federal court.  Removal is prohibited by statute.  [U. S. Compiled Statutes, 1918, sec. 1010.]  This, however, does not change the fact that the suit is one under a Federal law.  Prior to the statute (Carmack's Amendment), it is
Attachment:
Federal Rule.    true, that there was a right of action against a railroad for damages to goods, which were transported by the railroad.  But the peculiar right of action given by this statute did not exist. We mean the absolute right to sue for, and recover against the initial carrier, the damages sustained, although the damages did not result from any personal act of the initial carrier.  Under the Federal rule jurisdiction in Federal courts could not be secured by a mere attachment proceeding.  The defendant had to be within the territorial jurisdiction of the court, and personal service upon the defendant is required.  There must be jurisdiction over the person of the defendant before attachment can be maintained under the Federal rule.  [Big Vein Coal Co. v. Read, 229 U. S. 31; Laborde v. Ubarri, 214 U. S. 173; Ex parte Railway Co., 103 U. S. 796.]

Had the suit involved here been brought in the Federal court in St. Louis, rather than the State court, as it was brought, it is clear that such Federal court could acquire no jurisdiction under the cases, supra. Has the State court in actions based upon a Federal law, more power than a Federal court in the same district? This is the interesting query.

III.  We are not inclined to think that we should

rule (as the majority opinion does rule) that the State court can obtain jurisdiction in a case of the character involved here, when the Federal court in the same city could not acquire such jurisdiction. The majority opinion says that the action is one stated Jurisdiction of State Court: When Denied to Federal Court. under the Carmack Amendment, as we have stated above, but says that the State court could acquire jurisdiction per force of the proviso contained in the Carmack Amendment, which reads: "Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." It is reasoned that under previous or pre-existing Federal law, suit could be maintained against the connecting carrier for damages occasioned by it, and the amendment did not take away this right. We need not discuss this ruling by the majority, because no such case is involved here. The suit here is against an initial carrier, and for damages which under the pleadings, and inferences to be drawn from the language, were occasioned by the last connecting carrier. This right to sue the initial carrier for the damages which were occasioned by the connecting carrier was first given by the Carmack Amendment. Upon this peculiar right there was no pre-existing law, and this is the right sought to be inforced in the case involved in our proceeding.

The foregoing may be somewhat adrift from what we think is the vital question here. Can a State court acquire jurisdiction in method not tolerated by the Federal courts? It has been said that the Carmack Amendment not only creates a right, but furnishes a remedy. [Ry. Co. v. Wallace, 223 U. S. 1. c. 491.] But be this as it may, we must answer the question, does the statute allow the acquisition of jurisdiction in one way by a State court, which way cannot be used by a Federal court. The proviso to the statute speaks of rights preserved, but it has been ruled that "existing laws" as used in the statute "means existing common law as understood in the Federal courts, and excludes changes effected by State

statutes." [Lysaght v. Ry. Co., 254 Fed. l. c. 353.] Under no existing law could Federal courts acquire jurisdiction of the cause by mere attachment, without personal service. If this be the meaning of "existing law" in this statute, then the right to obtain jurisdiction of the cause and of defendant in the method used was not a right given by "existing law." The "existing law" denied this method of acquiring jurisdiction. The cases as to attachment without personal service, we have cited, supra. One other view, and we are through. Of that next.

IV. The right to sue out an attachment is a substantive right, and is not mere procedure. Especially is this true when attachment is used to obtain jurisdiction. In Butler v. Young, 1 Flippin, l. c. 279, it is said:

Substantive Rights.

"Care and caution will be used, that substantive rights given by the State laws shall not be confounded with what is mere practice in the State courts. In this connection I may mention, among other matters, the right to bring an absent or non-resident defendant into court by publication, or the right to a second trial, which are not matters of mere practice, but are substantial rights conferred by the statute of the State, and, in my opinion, were not contemplated by Congress by the law in question to be given to parties in this court."

The foregoing was quoted with approval in Harland v. United Lines Tel. Co., 40 Fed. l. c. 317. The force of it is that the acquisition of jurisdiction is substantive law, and not mere procedure. If it be substantive law, then in cases arising under a Federal law, the rule of the Federal courts must govern. Wherever substantive rights are involved in such cases the Federal rule must prevail. If the acquisition of jurisdiction is not a substantive right, it would be hard to find one. It has been ruled that "the question of burden of proof is a matter of substance and not subject to control by the laws of the several states." [Ry. Co. v. Harris, 247 U. S. 367; Baker v. Schaff, 211 S. W. l. c. 104, and the cases therein

cited.] So, too, the Federal rule as to what constitutes assumption of risk in personal injury cases is substantive law, to which the State courts must bow. [Pryor v. Williams, 254 U. S. 43, and cases therein cited.]

So if the acquisition of jurisdiction by attachment is substantive law, and in view of the rulings, supra, we think it is, then the statutes or rules of the State do not control, but the Federal rule must be applied by the State court. If jurisdiction by foreign attachment is denied by Federal rule, then it must be denied by the State trying a case arising under a Federal law, notwithstanding the State rule or State statute may be different. By the Federal rule an attachment is merely an incident to the suit and personal service must be obtained. If the State court undertakes to try a case arising under a Federal law, it must follow the Federal rule in matters of substantive law.

The State court is attempting to proceed without jurisdiction, and our preliminary rule should be made absolute.