## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

LEFEBVRE-ARMISTEAD COMPANY V. SOUTHERN PACIFIC
COMPANY, ET ALS.

May 28, 1925.

1. ATTACHMENT AND GARNISHMENT—*Foreign Carriers—Attachment by Resident of State of Traffic Balances Due a Foreign Carrier—Interstate Commerce—Carmack Amendment—Case at Bar.*—In the instant case, plaintiff, a Virginia corporation, filed its petition in attachment in the Circuit Court of Richmond against defendant, a foreign corporation, joining the Chesapeake and Ohio Railroad Company and the Southern Railroad Company, as codefendants, alleging loss from damage to goods shipped to plaintiff through the negligent and wrongful conduct of defendant, that defendant had possession of the goods at the time of damage; and that the Chesapeake and Ohio Railroad Company and the Southern Railroad Company, corporations doing business in Virginia, had in their possession traffic balances due defendant. Process was executed on the codefendants, the Chesapeake and Ohio Railroad and the Southern Railroad, but not on the principal defendant who appeared specially and moved to dismiss the attachment proceeding.

   *Held:* That the Circuit Court of Richmond had jurisdiction of the attachment; that the seizure of the credits of the principal defendant was not an unreasonable interference with the interstate commerce; that the proceeding was not a denial of due process of law to the carrier ultimately responsible, and that the proceeding as a whole was not subversive of the theory of the Carmack amendment.

2. CARRIERS—*Loss on Its Own Line—Common Law—Carmack Amendment.*—The common law liability of a carrier for loss occurring on its own line has not been changed by the Carmack amendment.

3. ATTACHMENT AND GARNISHMENT—*Foreign Carriers—Interstate Commerce—Traffic Balances.*—The fact that traffic balances due a carrier arose out of transactions of interstate commerce, does not render such traffic balances immune from seizure by attachment or garnishment.

4. CARRIERS—*Foreign Carriers—Jurisdiction.*—The orderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a State in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon,

in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. But this rule is not applicable where plaintiff is a resident of the State.

5. ATTACHMENT—*Foreign Attachments—Jurisdiction.*—Foreign attachments are proper methods of procedure: 1st, when the plaintiff is a resident, and 2nd, when the cause of action is domestic and, of course, a domestic attachment may be had when the defendant is a resident and this notwithstanding the fact that it may be engaged in interstate commerce and that the property attached is a traffic balance or even rolling stock.

6. CARRIERS—*Connecting Carriers—Carmack Amendment—Judgment in rem.*—The Carmack amendment provides that the initial carrier may recover from the carrier on whose line the loss or damage was sustained the amount of such loss, "as may be evidenced by any receipt, judgment, or transcript thereof." The statute does not make judgment a prerequisite. A receipt is sufficient and certainly a judgment *in rem.* No particular form of judgment is prescribed by the statute.

Error to a judgment of the Circuit Court of the city of Richmond in a proceeding by attachment. Judgment for defendant. Petitioner assigns error.

*Reversed and remanded.*

The opinion states the case.

*R. E. Peyton, Jr.,* and *S. A. Anderson,* for the plaintiff in error.

*D. H. & Walter Leake,* and *Munford, Hunton, Williams & Anderson* and *Mead T. Spicer,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

[1] This is a petition in attachment filed by Lefebvre-Armistead Company, a Virginia corporation, on August 16, 1920, in the Circuit Court of the city of Richmond. In that petition it is charged that on the 4th day

of August, 1915, The California Fruit Canners Association, a California corporation, delivered to the Southern Pacific Company, also a foreign corporation, 665 cases of canned goods consigned to its own order at Richmond, Virginia. The bill of lading therefor was sent by the canning association to the plaintiff, its Richmond agent and broker. Upon receipt thereof plaintiff sold said goods to four Richmond wholesale grocers for the aggregate sum of $2,487.10. These goods reached Richmond on October 2, 1915, damaged and worthless and it is for damages so suffered that this proceeding was instituted by the plaintiff at the relation and for the benefit of those to whom these goods had been sold. It was charged that the Southern Railway Company and the Chesapeake and Ohio Railway Company, corporations doing business in Virginia, had in their possession debts due to the Southern Pacific Company and subject to plaintiff's claim. In the petition the Southern Pacific Company is designated as the principal defendant and the Southern Railway Company and the Chesapeake and Ohio Railway Company as codefendants. Process was executed on these codefendants as of August 16, 1920, but not on the principal defendant. On the 17th of September, 1920, Chesapeake and Ohio Railway Company answered to the effect that it had a traffic balance of $1,691.15 due to the principal defendant and on the 12th of November, 1920, the Southern Railway Company answered stating that it had such a balance amounting to $1,600.00. On October 21, 1920, the Southern Pacific Company appeared specially by counsel and moved the court to quash and dismiss this attachment proceeding. This motion was sustained and this attachment was dismissed by an order of date June 18, 1923. To this order exception was taken and the case is now before us on appeal.

It is said that the court was without jurisdiction for the following reasons:

1st: The seizure of the credits of the principal defendant, for the purpose of compelling it to submit to the jurisdiction of the Virginia court, upon a cause of action arising elsewhere, constitutes an unreasonable interference with interstate commerce.

2nd: For the carrier ultimately responsible to be held liable in an attachment proceeding against the initial carrier, in which neither has appeared generally nor been served with process, would be a denial of due process of law to the carrier ultimately responsible and violative of the fourteenth amendment to the Constitution of the United States.

3rd: The proceeding as a whole is subversive of the theory of the Carmack amendment.

The petition alleges that the injuries complained of were caused by "negligent and wrongful conduct on the part of the Southern Pacific Company," and that the Southern Pacific Company had "possession of the goods at the time of the damage," and "was actually responsible for the damage to the goods." That company in the brief filed on its behalf accepts these charges as true for the purposes of this case as it now appears, its language being: "In this discussion it will be, therefore, so assumed."

[2] The common law liability of a carrier for loss occurring on its own line has not been changed. In *Cincinnati, N. O. & Tex. Pac. Ry. Co. v. Rankin,* 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265, the court, speaking through Mr. Justice McReynolds, said:

"Properly understood neither this (referring to *Adams Express Co. v. Croninger,* 226 U. S. 491) nor any other of our opinions hold that this amendment (the

Carmack amendment) has changed the common law doctrine theretofore approved by us in respect to a carrier's liability for loss occurring on its own line." See also *State* v. *Taylor*, 298 Mo. 474, 251 S. W. 383.

From this it follows that we have to deal with a simple case of foreign attachment, unaffected by any Federal statute, unless there is something in the nature of traffic balances due to interstate carriers which makes them immune to such proceeding. There is no such immunity.

[3] "The rolling stock held by the garnishee was then being used in interstate commerce, and the amount due on traffic balances arose out of transactions in such commerce. These facts did not render the property immune from seizure by attachment or garnishment. *Davis* v. *Cleveland, C. C. & St. L. R. Co.*, 217 U. S. 157, 54 L. Ed. 708, 27 L. R. A. (N. S.), 823, 30 Sup. Ct. Rep. 463, 18 Ann. Cas. 907;" *Atchison, Topeka & S. F. Ry. Co.* v. *Wells, et al.*, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928, decided May 12, 1924.

Nor would the result be changed should we disregard the assumption just made. Reliance is placed upon *Davis* v. *Farmers' Co-op. Equity Co.*, 262 U. S. 312, 43 S. Ct. 556, 67 L. Ed. 996, and *Atchison, Topeka & S. F. R. Co.* v. *Wells*, 265 U. S. 101, 44 S. Ct. 469, 68 L. Ed. 928, decided May 12, 1924. The first of these causes was begun in a State court of Minnesota. The *Santa Fe Railroad Company* was a Kansas corporation engaged in interstate transportation, but not doing business in Minnesota. The plaintiff was another Kansas corporation and the cause of action arose in Kansas. The transaction was in no way connected with that State. It was held, Mr. Justice Brandeis speaking for the court: "This condition imposes upon interstate commerce a serious and unreasonable burden which renders the statute obnoxious to the commerce clause."

A message dated February 2, 1923, from the Governor of Minnesota to the legislature disclosed the fact that in sixty-seven counties in that State there were pending personal injury damage suits brought by nonresidents against foreign railroads in which recoveries aggregating twenty-six millions of dollars were asked.

[4]. Relative to that decision it is pertinent to notice that the court observed "it may be that a statute like that here assailed would be valid although applied to suits in which the cause of action arose elsewhere, if the transaction out of which it arose had been entered (317) upon within the State, or if the plaintiff was when it arose a resident of the State. These questions are not before us, and we express no opinion upon them. But orderly, effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a State in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside."

In the *Wells Case* the plaintiff was a resident of Colorado. The cause of action arose in New Mexico. The principal defendant was a Kansas corporation and the suit was brought in Texas.

It is not necessary to elaborate upon the injustice of permitting a perambulating suitor to tarry at will by the still waters of some favoring statute or to scan a list of the judges in the United States until he finds one believed to have an attentive ear and then to drag all interested into his tribunal. But that is not our case. This plaintiff was at home.

The question suggested by the Justice in the *Davis Case* he has himself answered in *Missouri Ex. Rel. St. Louis, B. & M. R. Co.* v. *Taylor,* 45 S. Ct. 47, 69 L. Ed. 247, decided by the U. S. Supreme Court November 17, 1924.

There the American Fruit Growers, Inc., a Delaware corporation, with its usual place of business in Missouri, brought an action in a State court there against St. Louis, Brownsville and Mexico Railway Company.

"Jurisdiction was asserted solely by reason of the garnishment of traffic balances due from a connecting interstate carrier having a place of business in Missouri. The Brownsville Company is a Texas corporation; operates its railroad solely in that State; has no place of business in Missouri; and has not consented to be sued there. The cause of action sued on consisted of three claims of a consignee for damages to freight originating in Texas on lines of the Brownsville Company, and shipped on through bills of lading to points in other States."

The Brownsville Company entered no appearance, but afterwards applied for a writ of prohibition to enjoin the inferior court from taking cognizance of the pending action because of lack of jurisdiction. This was denied (298 Mo. 474, 251 S. W. 383), and that litigation finally reached the Supreme Court on a writ of error and also on *certiorari.* Two matters were stressed and were dealt with thus:

"The claim that the inferior court of Missouri lacked jurisdiction of the action for damages is rested on two grounds. One contention is that the Missouri attachment law, as construed and applied, is void under the rule of *Davis* v. *Farmers' Co-op. Equity Co.,* 262 U. S. 312, 67 L. Ed. 996, 43 Sup. Ct. Rep. 556, and *Atchison, T. & S. F. R. Co.* v. *Wells,* 265 U. S. 101, 68 L. Ed. 928, Adv. Ops. page 532, 44 Sup. Ct. Rep. 469. The facts of this case differ vitally from those involved there. Here, the plaintiff consignee is a resident of Missouri, that is, has a usual place of business within the State; the shipment out of which the cause of action arose was of goods

deliverable in Missouri; and, for aught that appears, the negligence complained of occurred within Missouri. To require that, under such circumstances, the foreign carrier shall submit to suit within a State to whose jurisdiction it would otherwise be amenable by process of attachment does not unreasonably burden interstate commerce.

"The other contention is more strenuously urged. It is argued that the cause of action on which the consignee sues is the liability of the initial carrier for a loss occurring through the negligence of a connecting carrier; that this liability arises out of a Federal law, Carmack amendment, June 29, 1906, chapter 3591, section 7, pages 11 and 12, 34 Stat. at L. 584, 595, Comp. Stat. sections 8604a, 8604aa, 4 Fed. Stat. Anno. (2nd ed.) page 599; that the conditions under which the Federal right may be enforced are the same whether the plaintiff proceeds in the State court or the Federal court; that original jurisdiction could not have been obtained by attachment in a Federal court for Missouri, because personal service could not be made upon the Brownsville Company (*Ex parte Des Moines R. Co.*, 103 U. S. 794, 26 L. Ed. 461; *Big Vein Coal Co.* v. *Read*, 229 U. S. 31, 57 L. Ed. 1053, 33 Sup. Ct. Rep. 694); and that, therefore, no court of the State could entertain a suit to enforce the claim.

"The argument is unsound. Congress created the right of action. It might have provided that the right shall be enforceable only in a Federal court. It might have provided that State courts shall have concurrent jurisdiction only of those cases which, by the applicable Federal law, could, under the same circumstances, have been commenced in a Federal court for the particular State. But Congress did neither of these things. It dealt solely with the substantive law. As it made no

provision concerning the remedy, the Federal and the State courts have concurrent jurisdiction. *Galveston, H. & S. A. R. Co.* v. *Wallace,* 223 U. S. 481, 490, 56 L. Ed. 516, 522, 32 Sup. Ct. Rep. 205. The Federal right is enforceable in a State court whenever its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws."

Little remains to be said. This comprehensive discussion of these vexed questions by this court of final authority warrants the extent of the citation. Matters there dealt with are no longer matters in dispute. Once uncertain, difference of opinion as to them is no longer possible. They have been definitely removed from the realm of dispute.

Weight is sought to be attached to this statement in that opinion:

"The facts in this case differ vitally from those involved there. Here, the plaintiff consignee is a resident of Missouri, that is, has its usual place of business within the State; the shipment out of which the cause of action arose was of goods deliverable in Missouri; and for aught that appears, the negligence complained of occurred in Missouri. To require that, under such circumstances, the foreign carrier shall submit to suit within a State to whose jurisdiction it would otherwise be amenable does not unreasonably burden interstate commerce."

[5] We are asked to hold that the judgment was based upon this expression: "And for aught that appears, the negligence complained of occurred in Missouri." This, however, is but one of the three elements cited by the court as distinguishing it from the *Wells Case* and from the *Farmers' Co-op. Equity Co. Case,* and fairly construed leads to no such result. It is but one of three disjunctive conditions in which jurisdiction attaches. For-

·eign attachments are proper methods of procedure: 1st, when the plaintiff is a resident, and 2nd; when the cause of action is domestic and, of course, a domestic attachment may be had when the defendant is a resident and this notwithstanding the fact that it may be engaged in interstate commerce and that the property attached is a traffic balance or even rolling stock.

[6] And finally it is contended that because of this provision in the Carmack amendment (U. S. Comp. St. section 8604aa): "That the common carrier, railroad or transportation company issuing such receipt or bill of lading (the initial carrier) shall be entitled to recover from the common carrier, railroad or transportation company on whose lines the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury, as may be evidenced by any receipt, judgment, or transcript thereof," the Southern Pacific Company could not, as the initial carrier, recover over any sum which it might have to pay from a connecting carrier on whose line the damage actually occurred.

In the first place, as we have seen, this is not a case of recovering against the initial carrier at all, but of recovery against the carrier primarily liable and there is no recovery over at all. But if this were not the case the statute does not make judgment a prerequisite. A receipt is sufficient and certainly a judgment *in rem* is. Such was the judgment in the *Taylor Case*. No particular form of judgment is prescribed by statute.

The motion to quash and dismiss must be overruled. The case may then be matured by publication, if necessary, and should be heard upon its merits in accordance with the views here expressed. The judgment finally obtained, if any, to be satisfied out of traffic balances attached. That judgment appealed from must be reversed.

*Reversed and remanded.*